THE VILLAGE OF FRANKLIN PARK, Plaintiff-Appellee, *v.* RICHARD B. OGILVIE, Trustee, Defendant-Appellant.

First District (3rd Division)    No. 80-1224

Opinion filed April 21, 1982.

Carol Richards Lutz, of Chicago, for appellant.

Kinnaird and Kinnaird, of Chicago (Dorothy Kirie Kinnaird and R. Burke Kinnaird, of counsel), for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

The Chicago, Milwaukee, St. Paul and Pacific Railroad Company (railroad) appeals from orders entered by the circuit court of Cook County denying its amended motion to vacate default judgments. The relevant facts follow. Between December 1976 and January 1979 the Village of Franklin Park (village), a municipal corporation, filed over 200 complaints in the circuit court against the railroad for violation of the village's municipal code. The Municipal Code of the Village of Franklin Park provides in chapter 19 "Miscellaneous Offenses and Provisions" and in section 19—17 "Railroad not to obstruct grade crossings":

> "(a) It is unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad-highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad or engine cannot be moved by reason of circumstances over which the railroad corporation has no control."

The actual violations occurred between December 24, 1976, and September 29, 1978. On December 19, 1977, the railroad petitioned for reorganization in the United States District Court for the Northern District of Illinois under section 77 (chapter VIII) of the Bankruptcy Act of 1898 (11 U.S.C. §205 (1976)).[1] On the following day, the bankruptcy court entered an order which provided, among other things, that:

> "10. All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby *are restrained and enjoined from commencing or continuing any court or other proceeding against the Debtor,* * * * subject, however, to the further order of this court made in accordance with the provisions of Rule 8—501 of the Rules of Bankruptcy Procedure except that this order shall not operate (a) to stay the commencement or prosecution to judgment of any claim or action for damages caused by the operation of trains, buses, or other means of transportation, or * * *." (Emphasis added.)

There are 210 proceedings for violations of section 19—17 involved in this appeal. Of these 210, judgments for the village were entered by default in 112 of the cases on December 29, 1977, and in 98 of the cases on May 24, 1979. Fines were imposed on each of the judgments. Thus, all of the default judgments were entered after the filing of the petition for reorganization, although proceedings against the debtor were commenced and the actual road blockages occurred both before and after the filing of the petition.

Subsequently, on January 18, 1980, Richard B. Ogilvie, trustee of the

---

[1] Subsequent to the filing of the petition, the Bankruptcy Act of 1898 has been replaced by the Bankruptcy Reform Act of 1978.

railroad, filed a motion to vacate the default judgments entered on December 29, 1977, and May 24, 1979. An amended motion to vacate these default judgments was filed on March 7, 1980, and it is from the denial of this motion that this appeal is taken.

The railroad argues on appeal that the court proceedings below were stayed during the pendency of the railroad reorganization and that the failure of the plaintiff to obtain the permission of the reorganization court to bring these 210 actions to judgment is a jurisdictional defect which requires reversal of the judgments entered by the circuit court. Conversely, appellee village contends that the trial court had jurisdiction of the person and of the subject matter in entering the judgments against the railroad. According to the village, the judgments were therefore valid, and should be submitted to the bankruptcy court to determine whether they will be enforced.

If the court below lacked jurisdiction of the subject matter when it entered the judgments, as the Milwaukee Road contends, then the judgments entered by that court were void. (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 459, 312 N.E.2d 620.) Since a void judgment may be set aside at any time (*Johnson v. Hawkins* (1972), 4 Ill. App. 3d 29, 31, 280 N.E.2d 291), the two-year limitation and other requirements of section 72 of the Civil Practice Act will not prevent relief to the railroad if the judgments entered against it were void. See Ill. Rev. Stat. 1979, ch. 110, par. 72(3), (6).

Section 77 of the Bankruptcy Act of 1898 (11 U.S.C. §205 (1976))[2] is applicable to the facts of this case. (See Bankruptcy Reform Act of 1978, 11 U.S.C.A. §403(a) (transition) (1979); *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (7th Cir. 1981), 654 F.2d 1218, 1220 n.2.) Under section 77(a), in railroad cases the reorganization court has "exclusive jurisdiction of the debtor and its property wherever located." (See also *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (7th Cir. 1981), 654 F.2d 1218, 1220.) Subsection (j) gives a judge in a reorganization proceeding discretion to enjoin or stay suits, in the following words:

"In addition to the provisions of section 29 of this title for the staying of pending suits against the debtor, the judge may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; * * * *Provided,* That suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction and any order staying the prosecution of any such cause of action or appeal shall be vacated. * * *" (11 U.S.C. §205(j).)

---

[2] Although section 77 is applicable here, it has been superseded by provisions of the Bankruptcy Reform Act of 1978.

Bankruptcy Rule 8—501(a) (11 U.S.C.A. Bankruptcy Rule 8—501(a) (1977)) provides:

> "A petition filed under Rule 8—102 or 8—103 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against it, * * * except that this rule shall not operate (1) to stay the commencement or prosecution to judgment of any claim or action for damages caused by the operation of trains, buses, or other means of transportation, * * *."

Parties affected by this stay are given ample means under subdivisions (c) and (d) of the rule to obtain relief from the stay. (See Advisory Committee's Note to Rule 8—501.) Thus, in the instant case, the commencement or continuation of suits against the debtor was stayed by both the order of the bankruptcy judge and Rule 8—501. The stay order entered by the bankruptcy judge is, for our purposes, identical to the stay imposed by the rule.

■■ The exception to the stay "of any claim or action for damages caused by the operation of trains" is clearly not applicable here. These are not claims or actions for damages. Rather, they are quasi-criminal actions seeking to impose a fine or penalty upon the railroad. The village argues that these prosecutions for violations of the ordinance resulted in the imposition of punitive damages, and, therefore, that they may properly be maintained in State court. The plain meaning of the terms "damages" and "punitive damages" prevents such a conclusion. Damages are "[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another." (Black's Law Dictionary 466 (4th ed. 1968).) Punitive, or exemplary, damages are "damages on an increased scale, awarded to the plaintiff over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant, and are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong, or else to punish the defendant for his evil behavior or to make an example of him." (Black's Law Dictionary 467-68 (4th ed. 1968).) The fines that the village is trying to recover are clearly not damages because they are not compensatory in nature. Similarly, they are not punitive damages because they are not enhanced damages. Rather they are penalties, *i.e.*, punishment imposed as a consequence of the commission of an offense. (Black's Law Dictionary 1290 (4th ed. 1968).) We, therefore, conclude that this case does not fall

within the aforementioned express exception to the stay. See *United States v. Dorigan* (E.D.N.Y. 1964), 236 F. Supp. 106, 108.

The railroad relies primarily upon *United States v. Dorigan* in arguing that the circuit court lacked jurisdiction to enter the judgments at issue in this appeal. That case involved an action by the United States government against the trustees of a debtor railroad to recover a penalty for violation of the Federal Safety Appliance Act. The violation had occurred prior to the filing of the petition for reorganization, and on the day the petition was filed, the bankruptcy court entered an order which restrained and enjoined all persons "from commencing or continuing any suits against the debtor" subject to an exception similar to the aforementioned exception to the stays in this case. In holding that the complaint would be dismissed unless consent to institute the suit was obtained from the bankruptcy court, the court stated:

> "* * * there is no authorization for such suit after the appointment of trustees. Failure of the Government to obtain permission of the Bankruptcy Court to bring the present action was a *jurisdictional defect* justifying dismissal." (Emphasis added.) (236 F. Supp. 106, 109.)

The court also stated that the purpose of staying suits was "to require all suits against the Debtor to be determined by the Bankruptcy Court so that the Court might not be delayed or frustrated in expeditiously reorganizing the properties of the Debtor." (236 F. Supp. 106, 109.) The railroad, on the authority of *Dorigan*, argues that the failure of the village to file a complaint pursuant to Bankruptcy Rule 8—501(c) seeking relief from the stay was a "fatal flaw."

Notwithstanding *Dorigan*, there is authority for the position that the old Bankruptcy Act was not intended to interfere with the criminal or quasi-criminal laws of a State. Thus, in *People v. Penn Central Transportation Co.* (1978), 95 Misc. 2d 748, 417 N.Y.S. 822, a court stated that bankruptcy proceedings are civil in nature and do not divest a State court of criminal jurisdiction. The instant case involves a civil action to enforce a quasi-criminal ordinance. *Colonial Tavern, Inc. v. Byrne* (D. Mass. 1976), 420 F. Supp. 44, is instructive on the effect of the old Bankruptcy Act on the police power of the State. In that case, the Federal district court affirmed the order of the bankruptcy judge which vacated a temporary restraining order and refused to grant a preliminary injunction enjoining the licensing board of the City of Boston, the police commissioner of the City of Boston, and the Massachusetts Alcoholic Beverages Control Commission from enforcing the suspension for 60 days of liquor licenses held by the debtors. That case involved a stay imposed by Bankruptcy Rule 11—44 upon the filing of a petition under Chapter XI of the Bankruptcy Act. The court stated:

"In my view, the true relationship between the Bankruptcy Act and comprehensive state regulation was described by Judge Augustus Hand in *In re Bay Ridge Inn, Inc., Smith v. New York State Liquor Authority,* 94 F.2d 555, 557 (2d Cir. 1938). * * * [T]he powers of a Bankruptcy Court do not extend to interference in the comprehensive regulatory laws of a state. * * *

* * * If the debtor's position were to be adopted, Chapter XI would provide an instantly available, cheap and easy sanctuary from all state regulatory proceedings.

Nothing in the prior case law of section 314 of the available history of Rule 11—44 suggests that the Bankruptcy Act was ever intended by Congress to subvert the valid police power of the states in this manner." (420 F. Supp. 44, 45-46.)

Similar language is also found in *In re Application of Lewis* (S.D.N.Y. 1981), 512 F. Supp. 1146, 1149, where the court said: "a state's exercise of regulatory or 'police' power is not divested of jurisdiction or authority by the fact that the subject is under the exclusive jurisdiction of a federal bankruptcy court."

■■ Here, the ordinance involved is a "police power" provision. As such, we conclude that Congress did not intend to interfere with its enforcement, at least insofar as the State court proceedings do not result in a taking of property. Accordingly, we hold that the circuit court had jurisdiction to enter the judgments and impose fines. We make no holding as to the enforceability of those judgments or fines. By limiting the scope of our decision, our State courts will not be interfering with the reorganization of the properties of the debtor.

Having determined that the circuit court had jurisdiction to enter the judgments, the only remaining question is whether the railroad was entitled to relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). The railroad's first motion to vacate was filed on January 18, 1980, more than two years after the December 29, 1977, judgments. Section 72(3) provides with certain exceptions not applicable here that a petition be filed not later than two years after the entry of judgment. Therefore, the trial court did not err in denying the amended motion to vacate as to the December 29, 1977, judgments. *Johnson v. Hawkins* (1972), 4 Ill. App. 3d 29, 32, 280 N.E.2d 291.

■ Furthermore, the railroad was not entitled to relief under section 72 from the judgments entered on May 24, 1979. To warrant section 72 relief, the petitioner must demonstrate: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the trial court in the original action; (3) that through no fault of his own an error of fact was made or a defense or claim was not raised; and (4) due diligence in filing the section 72 petition. The petitioner must set forth

specific factual allegations supporting each of these elements and must prove his right to the relief sought by a preponderance of the evidence. (*Canton v. Chorbajian* (1980), 88 Ill. App. 3d 1015, 1021, 410 N.E.2d 1166; *Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 482, 386 N.E.2d 284.) In order to obtain relief from a default judgment a petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that he acted reasonably, and not negligently, when he initially failed to resist the judgment. (*American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 643, 400 N.E.2d 102.) In the instant case, the railroad failed to allege and prove the exercise of due diligence in presenting a defense in the original action. The affidavit of counsel for the railroad which accompanied the motion to vacate, merely stated that he had informed village prosecutors of the pendency of the bankruptcy proceedings and the stay order, and that he was never informed that judgments in the State court had been entered. A section 72 petition is not intended to relieve a party from the consequences of his own mistake or negligence (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294), and a litigant has a duty to follow the progress of his case (*Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 483). Here, the railroad did not. Accordingly, the railroad was not entitled to relief from any of the judgments under section 72.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.