BANK OF RAVENSWOOD, as Trustee, *et al.*, Plaintiffs-Appellees, v. DOMINO'S PIZZA, INC., Defendant-Appellant (Glen A. Spicer *et al.*, Defendants).

First District (2nd Division)   No. 1—93—3507

Opinion filed January 24, 1995.—Rehearing denied February 16, 1995.

Cassiday, Schade & Gloor, of Chicago (Bruce M. Wall, Beth A. Landau, and Sandra E. Kupelian, of counsel), for appellant.

Clark & DeGrand, of Chicago (Luke DeGrand and Stephen A. Kolodziej, of counsel), for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

In 1984, plaintiffs filed a complaint in the chancery division of the circuit court seeking specific performance of a lease agreement and injunctive relief, and naming Glen Spicer (Spicer) and Domino's Pizza, Inc. (Domino's), as defendants. Spicer had entered a 10-year lease agreement with plaintiffs in which he agreed to operate as a Domino's franchisee in plaintiffs' Oak Park, Illinois, shopping center.

On October 13, 1984, defendant Spicer filed a motion to dismiss and mailed a notice of the motion to Domino's at 8600 Bryn Mawr in Chicago. On November 13, 1984, Spicer's attorney, V.L. Milos, entered an appearance on behalf of Domino's as well and, on March 22, 1985, Patrick Moore, Ltd. (Moore), entered an additional appearance on behalf of Spicer and Domino's.

Domino's moved to dismiss the complaint in December 1984, asserting that Spicer was an independent contractor, rather than a Domino's employee, and that Domino's was not a party to the lease at issue. Prior to ruling on that motion, the court allowed plaintiffs to file an amended complaint.

Plaintiffs' four-count amended complaint, which was filed in February 1985, alleged breach of contract, sought an injunction prohibiting defendants from operating a Domino's franchise at any other location, and alleged that Domino's had interfered with its contractual relations with Spicer. Thereafter, the trial court granted Domino's motion to dismiss as to the injunction and breach of contract counts, but allowed the interference with contractual relations count to stand. On July 30, 1985, Domino's filed its answer, denying plaintiffs' allegations and asserting that since plaintiffs "previously breached the contract," it was impossible for Domino's to have interfered with their contractual relations.

In October 1985, plaintiffs filed their second amended complaint, naming Spicer's corporation, Oak Park Pizza One, Inc. (Oak Park Pizza), as an additional defendant and adding a count alleging breach of contract by Domino's as an undisclosed principal.[1] After Spicer filed a counterclaim, alleging breach of lease and breach of warranty, Domino's moved to dismiss the counts against it. On January 23, 1986, the trial court granted Domino's motion on the injunction count, which had been reasserted in the second amended complaint, and denied it on the other counts. Domino's filed its answer and joined in the affirmative defenses of the other defendants on January 30, 1986.

In June 1987, the trial court granted plaintiffs' motion for summary judgment against Spicer on the issue of breach of the lease agreement as well as on Spicer's counterclaim, but denied their motion for summary judgment on the issue of damages against Spicer.

On October 5, 1989, plaintiffs moved for an order of default against defendants, alleging that they had failed to produce certain documents as required by a June 10, 1988, court order. On December 12, 1989, the trial court declared Domino's and Oak Park Pizza in default for failing to appear for a pretrial conference. The record contains no order vacating the default. On March 15, 1990, however, the trial court entered an order continuing a hearing on "motion of Plaintiff to default certain defendants, and oral motion of defendants to vacate default." Two weeks later, the trial court again granted a continuance until April 20 for a hearing on, *inter alia*, "plaintiffs' motion for sanctions and for order of default," the court indicating in the order that the parties were engaged in settlement negotiations. The trial court entered two more orders continuing the proceedings, first until May 1, 1990, and then until May 18, 1990.

The record does not contain a report of proceedings regarding the May 18 hearing, nor does it reflect what occurred between the May 1 continuance order and December 14, 1990, when Domino's attorneys moved to withdraw as defendants' counsel, citing irreconcilable differences with defendants.[2] Domino's was served with notice of the motion by certified mail at the Bryn Mawr address, but it denies receiving notice of that motion, noting that one month before counsel filed their motion to withdraw, mail sent from Moore to Domino's at the Bryn Mawr address had been returned, marked F.O.E. (forwarding order expired).

---

[1]Spicer and Oak Park Pizza are not parties to this appeal.

[2]On appeal, plaintiffs incorrectly assert that defense counsel moved to withdraw on November 9, 1990.

The trial court granted defense counsel's motion, ordering them to serve a copy of the order within three days and granting defendants until January 4, 1991, to file substitute counsel's appearance or to appear *pro se*.

On March 16, 1991, plaintiffs filed another motion seeking an order of default against defendants, realleging their failure to comply with the court's discovery order and asserting that they had failed to obtain substitute counsel. Plaintiffs served notice of the motion and of the hearing on the motion on Domino's at the Bryn Mawr address. In the meantime, on March 12, 1991, the case was dismissed for want of prosecution after plaintiffs failed to appear when the case was called for trial. Plaintiffs later successfully moved to vacate that dismissal.

On April 9, 1991, the court entered an order holding defendants in default and, on May 1, 1991, it entered judgment for plaintiffs in the amount of "$128,487.25, plus costs." On June 28, 1993, more than two years after entry of the default order and the money judgment, plaintiffs had a citation to discover assets issue against Domino's and served notice thereof on its registered agent, C.T. Corporation, in Chicago.

On July 28, 1993, Domino's newly retained counsel, Cassiday, Schade & Gloor (Cassiday), filed a special and limited appearance on Domino's behalf,[3] and on September 2, 1993, Domino's filed an "Emergency Motion to Vacate Order and to Stay Citation Proceedings" pursuant to section 2—1401 of the Code of Civil Procedure. See 735 ILCS 5/2—1401 (West 1992).

Domino's asserted that it had no notice that its original attorneys had withdrawn from the case or that a default judgment had been entered against it. It claimed that the delay in enforcing their judgment "cast a cloud over the plaintiffs." Domino's asserted that plaintiff Sam Borek had had "a long series of communications and contacts" with Domino's through its corporate headquarters in Ann Arbor, Michigan, and had served process on Domino's regarding other litigation through its registered agent in Chicago, C.T. Corporation. Finally, Domino's asserted that during the time between entry of the default judgment and plaintiffs' attempt to enforce it, plaintiff Sam Borek had been engaged in settlement negotiations with

---

[3]In response to questioning at oral argument, counsel for Domino's stated that the special appearance was filed as a precautionary measure. Since the trial court had personal jurisdiction over Domino's at all times during the pendency of this case, we have great difficulty in apprehending the necessity or the propriety of the special and limited appearance.

Domino's regarding other cases. Domino's attached to its motion copies of the judgment, the order allowing Domino's original counsel to withdraw, and a copy of an envelope addressed to Domino's at 8600 Bryn Mawr and returned in November 1990 to Moore marked F.O.E.

On September 8, 1993, the trial court denied Domino's motion, explaining that "judgment was entered more than 2 years ago and therefore the § 2—1401 motion was not brought within the required 2 years and *** that the negligence of defendant's previous attorneys is not a basis for vacating the judgment order."

On September 22, 1993, Domino's filed a motion to reconsider, and attached thereto was the affidavit of attorney Bruce M. Wall of Cassiday, averring that in late 1992, during the course of settlement negotiations with plaintiff Sam Borek on another matter involving Domino's, he sent Borek a general release. Borek refused to sign the release, stating that it was too broad. He explained to Wall that he had other pending litigation involving Domino's, but he refused to discuss the specifics of that litigation and made no mention of the May 1991 judgment.

Plaintiffs filed a response to Domino's motion to reconsider and a cross-motion seeking sanctions against Domino's pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), asserting that Domino's motion to reconsider was baseless and "amount[ed] to little more than an effort to harass Borek, delay the resolution of this matter, and falsely intimate wrongdoing on the part of Borek."

The trial court denied both Domino's motion to reconsider and plaintiffs' cross-motion for sanctions. Domino's now appeals.

Domino's first contention is that the April 9, 1991, default order and subsequent damages award are void because they were entered *ex parte*. Plaintiffs correctly counter that those orders were not *ex parte* even if Domino's never actually received notice of them.

■ Supreme Court Rule 11 requires that service of papers be made upon the opposing party's attorney of record or upon the party.[4] (134 Ill. 2d R. 11.) Section 2—1302 of the Code of Civil Procedure provides that the moving party's attorney must provide notice of the entry of a default judgment to each party who has appeared and against whom the order was entered, or to the party's attorney of record. Section 2—1302 goes on to state that "the failure of the attorney to give the notice does not impair the force, validity or effect of the order." 735 ILCS 5/2—1302 (West 1992).

---

[4]Rule 11 goes on to provide that one method of service is by mail; the rule does not require that the intended recipient actually receive the papers. 134 Ill. 2d R. 11(b)(3).

■ In the instant case, plaintiffs provided notice of their motion for default to Domino's at its Bryn Mawr address. Such notice was in conformity with Rule 11 since, at the time, Domino's did not have an attorney of record and the Bryn Mawr address was its only address of record.

Domino's reasons that if mail addressed to the Bryn Mawr address was returned to Moore, then plaintiffs' mail also must have been returned. There is no documentation to that effect in the record, however. Nor is there any indication that Domino's informed the court or plaintiffs of its change of address. The record contains only the envelope returned to one of its original attorneys in November 1990. The miscommunication, if any, between Domino's and its original attorneys resulting in plaintiffs' sending notice of proceedings to an incorrect address must be attributed to Domino's, which apparently failed to keep abreast of the litigation. See *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 221, 359 N.E.2d 740, 744.

Domino's has miscomprehended the nature of an *ex parte* proceeding, which is one brought for the benefit of one party without providing notice or an opportunity to be heard to the opposing party. (*Gallagher v. Swiatek* (1982), 106 Ill. App. 3d 417, 420, 435 N.E.2d 1287, 1290.) In the instant case, notice was sent to Domino's at its only address of record and where it apparently had received notices earlier in the litigation. The default proceedings were, therefore, not *ex parte*. Even assuming that Domino's did not receive notice, that fact does not render notice inadequate. *Nenadic v. Grant Hospital* (1979), 75 Ill. App. 3d 614, 623, 394 N.E.2d 527, 535; see also *Fennema v. Vander Aa* (1969), 42 Ill. 2d 309, 311, 247 N.E.2d 409, 410 (an allegation that the plaintiff's attorney did not receive notice of a pretrial conference on the defendant's motion to dismiss was insufficient to support a motion to vacate the subsequent dismissal absent a showing that notice was not sent).

We find it significant that Domino's claim of lack of notice is made within the context of a section 2—1401 petition which requires, *inter alia*, that the petitioner show due diligence in the underlying litigation. Regardless of any possible negligence on the part of its original attorneys in notifying it of their withdrawal, Domino's was aware of the claim against it and had an independent duty to follow the progress of its case. *Nenadic*, 75 Ill. App. 3d at 623, 394 N.E.2d at 535; *Falcon Manufacturing Co. v. Nationwide Brokers, Inc.* (1984), 123 Ill. App. 3d 496, 499-500, 462 N.E.2d 562, 565; *Cooper v. United Development Co.* (1984), 122 Ill. App. 3d 850, 856-57, 462 N.E.2d 629, 634; see also *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 751-52, 404 N.E.2d 554, 558 (holding that the defendant's assertion that he

missed a court date because of a lack of notice was insufficient under former section 72 since he had a duty to follow his case).

In sum, we hold that the default and damage orders entered by the trial court are not void since Domino's does not allege that notice was not sent, only that it was not received, and because Domino's had a duty to follow its case.

Domino's next asserts that the trial court's order of default and damages was a nonfinal order because it awarded a specific amount of damages "plus costs" and that judgments so entered without specifying the amount of costs are nonfinal. From that premise, Domino's reasons that the limitations period contained in section 2—1401, and upon which the trial judge relied in rendering his order, is inapplicable because that statute applies only to final judgments or orders. 735 ILCS 5/2—1401(a) (West 1992).

Section 2—1401 provides that "[r]elief from *final orders and judgments*, after 30 days from the entry thereof, may be had upon petition as provided in this Section." (Emphasis added.) (735 ILCS 5/2—1401 (West 1992).) Final orders are those which resolve a separate and distinct part of the controversy (*Coryell v. Village of La Grange* (1993), 245 Ill. App. 3d 1, 5, 614 N.E.2d 148, 151), conclude the litigation on the merits, or dispose of the parties' rights in relation to all or part of the controversy (*Viirre v. Zayre Stores, Inc.* (1991), 212 Ill. App. 3d 505, 512, 571 N.E.2d 209, 213). If the trial court's ruling is final as to only part of the controversy or resolves the rights of fewer than all of the parties, an appeal may be taken only if the court indicates in writing that there is no just reason for delaying enforcement or appeal. (134 Ill. 2d R. 304(a).) Absent such a finding, the time for appealing orders which terminate the litigation as to fewer than all parties or claims commences only after entry of an order resolving the remaining claims or rights of the remaining parties. *In re Annexation of Certain Territory to the City of Darien* (1973), 16 Ill. App. 3d 140, 143-44, 304 N.E.2d 769, 772.

■ We do not agree with Domino's that an order awarding a specific amount in damages "plus costs" is nonfinal, for computation of costs is merely an incidental matter and does not affect the finality of an order which determines the ultimate rights of the parties. (Compare *Rettig v. Zander* (1936), 364 Ill. 112, 4 N.E.2d 30 (an order is final and appealable even though it reserves for later consideration incidental matters, such as directing a master in chancery to state an account), with *Anderson v. Samuelson* (1950), 340 Ill. App. 528, 92 N.E.2d 343 (a judgment for costs only which does not determine the rights of the parties is not final or appealable), and *Millard v. Cooper* (1880), 6 Ill. App. 420 (same); see also the following cases, each find-

ing that a judgment awarding damages "plus costs" is a final order, *First Wisconsin National Bank v. Kramer* (1990), 202 Ill. App. 3d 1043, 560 N.E.2d 938; *Knaus v. Dennler* (1988), 170 Ill. App. 3d 746, 525 N.E.2d 207, *appeal denied* (1988), 122 Ill. 2d 576, 530 N.E.2d 247; *Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 437 N.E.2d 1237.) Consequently, Domino's claim that the underlying order was not final because the trial court did not calculate the amount of costs is without merit.

The issue of whether that order was final is not, however, completely resolved. The May 1, 1991, order from which Domino's sought relief stated that

> "[j]udgment is entered in favor of Sam Borek (as agent for the Bank of Ravenswood Trust No. 25—6453) and against *all* defendants, Glen A. Spicer, Domino's Pizza, Inc. (an Illinois Corporation) in the amount of *$128,487.25* plus costs." (Emphasis in original.)

The order does not refer in any way to plaintiff CBS Corporation (CBS). On our own motion, we ordered the parties to file supplemental briefs on the issue of whether that order could be considered a final and appealable order even though it failed to designate one of the parties to the action and did not contain a Rule 304(a) finding that it was appealable. (134 Ill. 2d R. 304(a).) After considering the arguments of both parties, we conclude that the order was final and, consequently, that the provisions of section 2—1401 were applicable.

Generally, a judgment must designate the parties for and against whom it is entered or it will not be considered a final judgment. However, if a judgment does not comply with this requirement, we may correct technical defects so long as no party will be prejudiced. (*Wakefield v. Kern* (1978), 58 Ill. App. 3d 837, 838, 374 N.E.2d 1074, 1075-76; see also *Resudek v. Sberna* (1985), 132 Ill. App. 3d 783, 787, 477 N.E.2d 789, 791-92 (finding that an order granting the defendant's motion for summary judgment was final even though it did not expressly enter judgment for either party).) The trial court's order must be interpreted in light of the motions, pleadings and issues presented to the court and appearing in the record. *Gagliano v. 714 Sheridan Venture* (1986), 144 Ill. App. 3d 854, 858, 494 N.E.2d 1182, 1186; *City of Chicago v. American National Bank & Trust Co.* (1988), 171 Ill. App. 3d 680, 687, 525 N.E.2d 915, 919-20.

In *American National Bank*, the City of Chicago obtained a judgment in its favor for violations of the city housing code. On appeal, one of several defendants argued that the trial court's judgment was void because it failed to designate in whose favor judgment was entered. We observed that only one party, the city, asked for dam-

ages, and that by moving to vacate the order, the defendant indicated his understanding that the order applied to him. We therefore found that the order was valid and that failure to designate the parties was merely a technical deficiency. See *American National Bank & Trust*, 171 Ill. App. 3d at 687, 525 N.E.2d at 918-20.

In the case at bar, plaintiffs' motion for default included CBS in the caption and stated that "[p]laintiffs" were requesting an order of default and to set the matter for prove-up. On April 9, 1991, the court granted that motion, finding defendants in default. Obviously, that order adjudicated Domino's liability to all plaintiffs, including CBS. Thus, although the order specifying damages does not refer to CBS, we will treat it as a valid final order, for in the context of the record as a whole, it is clear that it applied to all plaintiffs and that the failure to designate CBS was merely a technical error subject to revision in this court. (See *American National Bank*, 171 Ill. App. 3d at 687, 525 N.E.2d at 919-20; 134 Ill. 2d R. 366.) Moreover, while a party's conduct cannot render a nonappealable order appealable, we note that both parties considered the May 1, 1991, order to be a final order; certainly Domino's would not have subjected itself to the stringent requirements of section 2—1401 if it believed that the order was not final. See *Burton v. Estrada* (1986), 149 Ill. App. 3d 965, 972 n.1, 501 N.E.2d 254, 259 n.1 (noting that since the underlying order did not dispose of the claims of all parties, the plaintiff likely could have avoided proceeding under section 2—1401, but nonetheless considering the merits of the defendant's appeal of the trial court's order granting the plaintiff's section 2—1401 petition).

Plaintiffs also claim that CBS is a beneficiary of trust No. 25—6463 and that it is bound by and benefits from the order despite the failure to designate it by name. (See *White v. Macqueen* (1935), 360 Ill. 236, 195 N.E. 832; see also *Pratt v. Board of Education of District No. 61* (1945), 326 Ill. App. 610, 63 N.E.2d 275.) In their verified complaint and in their first and second amended complaints, plaintiffs allege that CBS was a beneficiary of the trust.[5] In its answer, Domino's neither admitted nor denied that allegation and it accordingly demanded strict proof thereof. However, Domino's did not attach an affidavit of the truth of its lack of knowledge as required by the Code of Civil Procedure. (735 ILCS 5/2—610(b) (West 1992).) Section 2—610 provides that "[e]very allegation, except allegations of damages, *not explicitly denied* is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a

---

[5]The trial court excused verification of future pleadings on May 6, 1985, prior to the time that plaintiffs filed their second amended complaint.

belief, *and* attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny." (Emphasis added.) (735 ILCS 5/2—610(b) (West 1992).) Since Domino's failed to attach the requisite affidavit or to explicitly deny the allegation that CBS is a beneficiary of the trust, its answer must be deemed an admission of that fact. (See *Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 537 N.E.2d 1332; *In re Adoption of McFadyen* (1982), 108 Ill. App. 3d 329, 438 N.E.2d 1362.) We therefore need not be concerned with CBS' ability to benefit from the judgment entered in the trial court.

We can now address the merits of Domino's appeal. Domino's claims that the limitations period in section 2—1401 was tolled as a result of plaintiff Sam Borek's fraudulent concealment of the default order.

■ Section 2—1401 constitutes an exception to the general rule that the trial court loses jurisdiction over a cause of action 30 days from the entry of a final order or judgment. As such, the petitioner has the burden of showing by a preponderance of the evidence matters not of record which, if known to the trial court, would have prevented entry of the order or judgment. The petition must establish the existence of a meritorious claim or defense and the petitioner's exercising due diligence both in the original action and in pursuing relief under section 2—1401. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386; see also 4 R. Michael, Illinois Practice § 42.5, at 366 (1989).) The petition "must be supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2—1401 (West 1992).

Section 2—1401 contains a limitations period of two years following the judgment or order the petitioner seeks to vacate. When calculating the two-year period, time during which "the ground for relief is fraudulently concealed" is excluded. (735 ILCS 5/2—1401(c) (West 1992).) Courts have strictly construed this provision of the statute in furtherance of the policy favoring finality of judgments. (See, *e.g., Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 427-28, 411 N.E.2d 16, 18; *Johnson v. Hawkins* (1972), 4 Ill. App. 3d 29, 32-33, 280 N.E.2d 291, 293 (both involving the identical limitations period in former section 72).) In order to overcome the limitations period by showing fraudulent concealment, the petitioner must demonstrate "affirmative acts designed to prevent the discovery of a cause of action or ground for relief." Silence alone does not constitute fraudulent concealment. (*In re Marriage of Halas* (1988), 173 Ill. App. 3d 218, 224, 527 N.E.2d 474, 478; see also *Airoom,* 114 Ill. 2d at 226-28, 499 N.E.2d at 1389-90.) We have found fraudulent concealment

"(1) where plaintiff failed to notify defendant of the default judgment even while he represented to him that he 'would not be ready to talk settlement until after the first of the year,' when a related, criminal matter would have been settled, which also would have been after the time in which the defendant could make a direct attack on the judgment [citation]; (2) where the original summons was not served on the defendant and plaintiff did not inform it of initiating the suit, even when both parties were codefendants in another pending suit and were in constant negotiations and conferences regarding that other suit [citation]; and (3) where at the unnoticed prove up plaintiff claimed damages unrelated to the defendant's liability, thus taking advantage of both the defendant and the trial court [citation]." *Goulding v. Ag-Re-Co, Inc.* (1992), 233 Ill. App. 3d 867, 874-75, 599 N.E.2d 1094, 1099, *appeal denied* (1992), 147 Ill. 2d 627, 606 N.E.2d 1226.

The issue of fraudulent concealment is inescapably linked to a determination of due diligence. To meet the due diligence requirement, the petitioner must show a reasonable excuse for failing to take action within the applicable time limit. A determination of reasonableness requires an examination of all the circumstances of the litigation, including the conduct of the litigants and their attorneys. (*Airoom*, 114 Ill. 2d at 222, 499 N.E.2d at 1387; *Halas*, 173 Ill. App. 3d at 224, 527 N.E.2d at 478.) However, section 2—1401 is not a safety net rescuing litigants from the consequences of their own negligence or mistake. See *Airoom*, 114 Ill. 2d at 222, 499 N.E.2d at 1387.

■ Our review of the record shows that Domino's has utterly failed to establish that Borek took affirmative steps to conceal the default judgment. Domino's contends that if Borek had notified Wall that a default judgment was pending during their settlement negotiations on another matter, Domino's could have filed its section 2—1401 petition in a timely manner. However, as noted above, mere silence is not fraudulent concealment. Even if Borek breached the standards of professional courtesy by not explaining that a default had been entered against Domino's, his refusal to sign a general release because of other litigation involving Domino's should have, we imagine, engendered in Wall a curiosity absorbing enough to cause him to inquire further, at the very least of his own client, regarding that litigation. Had he done so, the strict limitations period in section 2—1401 could have been met.

Whether or not Wall failed to exercise diligence in this matter, Domino's cannot be relieved of the consequences of *its* own failure to follow the case. (*American Consulting Association, Inc. v. Spencer* (1981), 100 Ill. App. 3d 917, 922, 427 N.E.2d 579, 584, *cert. denied*

(1982), 458 U.S. 1112, 73 L. Ed. 2d 1375, 102 S. Ct. 3495; see also *Village of Franklin Park v. Ogilvie* (1982), 106 Ill. App. 3d 301, 307, 435 N.E.2d 1177, 1181-82.) Domino's offers no explanation for its failure to inquire about the case for almost three years (calculating from the time that its attorneys moved to withdraw in December 1990 until September 1993 when it filed its section 2—1401 petition). This period of inactivity is particularly inexplicable given that Domino's was apparently aware that a motion for default against it had been pending since December 12, 1989. At oral argument, counsel for Domino's suggested that it had acted reasonably under the circumstances since it is a large corporation and relies on its attorneys to monitor pending litigation. We are not persuaded and we refuse to hold large corporations, which obviously have ample resources, to a less demanding standard of diligence than other litigants. Moreover, counsel admitted at oral argument that Domino's has house counsel who certainly must be presumed to have been in communication with the private attorneys to whom they consigned this case; yet we are offered no explanation as to why such counsel so dismally failed to track the progress of the case, or the lack of it, over such a protracted period of time.

Domino's argues that any assessment of its diligence must be viewed in light of plaintiffs' lengthy delay in executing the judgment. Such delay is a factor in determining a section 2—1401 petitioner's diligence. However, delay in execution alone is not equated with fraudulent concealment nor does it excuse a party from its failure to follow its case. See *Agorianitis v. Ress* (1977), 55 Ill. App. 3d 325, 328, 371 N.E.2d 10, 11-12 (holding that "the plaintiff's mere failure to execute on a judgment, the only allegedly fraudulent act, is [not] fraudulent concealment"); see also *Airoom*, 114 Ill. 2d at 227, 499 N.E.2d at 1389-90.

We accordingly hold that the trial court correctly ruled that the limitations period in section 2—1401 barred consideration of Domino's petition. We also agree with the trial court that the possible negligence of Domino's original counsel does not form a sufficient basis for vacating the default order.

We finally address plaintiff Borek's motion, taken with the case, to strike Domino's docketing statement or portions thereof, contending that it "improperly attempted to expand the issues before this Court" by stating that the nature of the case is "contract and section 2—1401." Borek also objects to that portion of Domino's docketing statement which describes one of the issues presented as "whether plaintiffs failed to state a cause of action upon which relief could be granted."

Supreme Court Rule 303(g) requires the appellant to file a docketing statement within 14 days of filing its notice of appeal. (134 Ill. 2d R. 303(g).)[6] The docketing statement contains a section in which the appellant must identify the nature of the case. (134 Ill. 2d R. 303(g).) The purpose of the rule is to ensure that the appellate court is furnished information that will enable it to handle its docket efficiently and to monitor the progress of appeals. 134 Ill. 2d R. 303(g), Committee Comments, at 243.

■ While a section 2—1401 petition does not continue the earlier proceeding, but rather constitutes a new cause of action, Domino's section 2—1401 was brought within the context of plaintiff's breach of lease contract action. Therefore, Domino's description of the nature of the case as a contract action and a section 2—1401 proceeding was not misleading.

Borek is correct that the sufficiency of plaintiffs' complaint is not at issue because the burden is on the petitioner to show that it is entitled to relief under section 2—1401, and the sufficiency of plaintiff's complaint was never addressed in relation to the section 2—1401 petition. Nonetheless, inclusion of this issue in Domino's docketing statement appears to be a benign error rather than one which will result in a waste of resources and expense for the parties and this court. In fact, neither party has briefed or argued that issue on appeal; we therefore find no prejudice resulting to plaintiffs. (Cf. Kmoch v. Klein (1991), 214 Ill. App. 3d 185, 573 N.E.2d 267 (holding that the defendant's failure to timely serve a notice of appeal and docketing statement did not prejudice the plaintiff and, therefore, would not serve as a basis to dismiss the appeal).) Consequently, we deny Borek's motion.

Affirmed.

HARTMAN and McCORMICK, JJ., concur.

---

[6]The provisions governing docketing statements on appeal now appear in Rule 312. See Official Reports Advance Sheet No. 26 (December 22, 1993), R. 312, eff. February 1, 1994.