No. 2--96--0381

_________________________________________________________________

                              IN THE

                              APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

DIANNE L. MEYER and THE          )  Appeal from the Circuit Court

SPAUDIE FAMILY TRUST, by         )  of Du Page County. 

Bernice E. Spaudie, Trustee,     )

                                 )

     Petitioners-Appellants,     )

                                 )  No. 95--MR--349

v.                               )

                                 )

FIRST AMERICAN TITLE INSURANCE   )  

AGENCY OF MOHAVE, INC.,          )  Honorable 

                                 )  John W. Darrah,

     Respondent-Appellee.        )  Judge, Presiding.

_________________________________________________________________

                         

     PRESIDING JUSTICE McLAREN delivered the opinion of the

court:

     The petitioners, Dianne Meyer and the Spaudie Family Trust,

by Bernice Spaudie, trustee, are Illinois residents and appeal

from the entry of an order by the circuit court, upon motion of

the respondent, First American Title Insurance Agency of Mohave,

Inc. (First American), which found satisfaction of their

registered Illinois judgment.  735 ILCS 5/12--652 (West 1994). 

We reverse and remand.

     The procedural posture of this case is unique in Illinois. 

On February 27, 1990, in Arizona case number CV 88--07376

(Arizona 1988 judgment), the respondent had a judgment entered

against it, in the amount of $688,991.01, with post-judgment

interest set at 10%, in favor of Fairfax Industries, Inc.

(Fairfax).  The respondent appealed, and the Arizona Court of

Appeals affirmed the judgment, also entering an additional award

of $8,200 in attorney fees against the respondent.  Subsequently,

the Arizona Supreme Court, on June 29, 1993, denied the

respondent's request for further review of the Arizona 1988

judgment and ordered the respondent to pay additional costs of

$250 and additional attorney fees totalling $2,500.

     On July 1, 1989, Fairfax was dissolved under Illinois law. 

The petitioners in the case at bar allege that, as of that date,

the beneficial rights to 50% of all of the outstanding shares of

common stock in Fairfax were held by petitioner Meyer and the

remaining 50% was held by petitioner the Spaudie Family Trust.  

     On October 25, 1992, a separate action was filed in Arizona,

with an Arizona case number of CV 92--92186 (Arizona 1992

action), for a declaration of rights with respect to claims

formerly belonging to Fairfax.  Apparently, the Arizona 1992

action was instigated because a third-party judgment creditor of

Fairfax wished to satisfy its own judgment from the award which

Fairfax was to receive from First American.  Fairfax was neither

named nor joined as a party in the Arizona 1992 action.  On

February 12, 1993, as part of the Arizona 1992 action, John

Robert Meyer, attorney for the petitioner Dianne Meyer, signed

and filed an affidavit in which he stated, "from and after

December 30, 1988, the Hamilton Trust and the Oradell Trust were

each the owners of an undivided one-half interest in the Fairfax

Cause of Action.  The Trusts presently remain the owners and

holders of all rights and interests in the Fairfax Cause of

Action."  At oral argument before this court, counsel for the

petitioners indicated that, at the time John Robert Meyer made

this statement, he reasonably believed it to be true.

     In October 1994, First American interpleaded in the Arizona

1992 action.  First American did not name Dianne Meyer or the

Spaudie Family Trust as parties to the interpleader.

     On November 4, 1994, the court in the Arizona 1992 action

ordered that, upon payment of $1,032,792.18 to the clerk of the

court, First American would be dismissed from the Arizona 1992

action.  According to counsel for the petitioners when appearing

for oral argument in this appeal, the Arizona court found that

insufficient consideration was provided by the Hamilton Trust and

the Oradell Trust to support the alleged "spinoff" from Fairfax

to those trusts.  Further, the court ordered that First American

"be forever released and discharged from any and all liability to

all parties to this action."  The order also purported to adjudge

"that the Fairfax Judgment is and has been satisfied in full."

     On May 26, 1995, petitioner Dianne Meyer instituted the

present action by filing a verified petition in the circuit court

of Du Page County, Illinois, to enforce the Arizona 1988

judgment.  On June 15, 1995, the trial court granted the motion

of the Spaudie Family Trust for leave to intervene nunc pro tunc

in the Meyer petition, and the Spaudie Family Trust filed a

similar petition.  The petitions related that a transfer of stock

in Fairfax occurred, with Dianne Meyer and the Spaudie Family

Trust as recipients, and that Fairfax was dissolved as of July 1,

1989.  Therefore, the petitions concluded that 50% of the right,

title, and interest in the judgment against First American

belonged to Dianne Meyer, while the other 50% belonged to the

Spaudie Family Trust.  

     In addition, the petitions alleged that, in October 1994,

"which was more than five years after Fairfax' dissolution on

July 1, 1989, First American filed an attempted, but incomplete

and ineffective, interpleader action" in the Arizona 1992 action. 

According to the petitions, the court in the Arizona 1992 action

could not properly entertain jurisdiction over Fairfax, due to

the fact that the Illinois Business Corporation Act of 1983

provides that no action will lie against an Illinois corporation

dissolved for more than five years.  805 ILCS 5/12.80 (West

1994).  Further, the petitions set forth that First American did

not attempt to serve the Illinois Secretary of State on behalf of

Fairfax as a dissolved corporation (see 805 ILCS 5/5.05, 5.25

(West 1994)), nor did First American name Fairfax's alleged

successors in interest, Dianne Meyer or the Spaudie Family Trust,

in the Arizona 1992 action.

     As a result of these petitions, the Arizona 1988 judgment

was registered in Illinois.  

     On July 14, 1995, or more than 30 days after the

registration of the Arizona 1988 judgment in Illinois, First

American first entered its general appearance.  On that date,

First American moved to strike the May 26, 1995, registration of

the Arizona 1988 judgment, asserting that the Arizona 1988

judgment had been fully satisfied, as determined by outcome of

the Arizona 1992 action.  First American later amended its

motion, but still maintained that the registration in Illinois

could not stand because of the result of the Arizona 1992 action.

     On September 6, 1995, the trial court denied First

American's amended motion to vacate the registration.  First

American moved for reconsideration of that order.  On November

15, 1995, the trial court denied the motion for reconsideration. 

In making its ruling, the trial court stated that First American

"must procure something in an Arizona court that is traditionally

recognized as a release or a satisfaction and present it to this

court."  The trial court recommended that First American return

to the court that issued the Arizona 1988 judgment to accomplish

this purpose.  "Do that and I'll honor it," the trial court

admonished.

     On December 4, 1995, First American moved for an emergency

order of satisfaction, pursuant to section 12--183 of the Code of

Civil Procedure (Code) (735 ILCS 5/12--183 (West 1994)).  That

motion asserted additional orders in Arizona entered on November

17, 1995, and November 18, 1995.

     On December 15, 1995, First American filed a notice of

appeal from the November 15, 1995, order denying its motion for

reconsideration and to vacate.

     During the time granted for briefing on First American's

December 4, 1995, motion, First American then set out another

Arizona order, this one entered on December 21, 1995.  In that

order, the Arizona court that entered the judgment in the Arizona

1988 judgment found First American's liability "specifically

satisfied in full as to any and all claims by Dianne L. Meyer and

the Spaudie Family Trust, *** as set forth in Cause No. 95 MR

0349 filed in the Circuit Court of the Eighteenth Judicial

Circuit, Du Page County, Illinois, or otherwise."  First

American's motion to procure that December 21, 1995, order

expressly premised such a finding on the judgment entered on

November 4, 1994, in the Arizona 1992 action (the interpleader

which was ex parte as to the petitioners herein).  The Arizona

order dated December 21, 1995, did not recite any payment of the

Arizona 1988 judgment to the petitioners and did not recite any

releases executed by the petitioners.

     In response, Dianne Meyer and the Spaudie Family Trust each

filed affidavits which stated:  they have never received any

payments whatsoever from First American on the Arizona 1988

judgment; they have never released First American from any

judgment in any action; they have never filed an appearance in,

or authorized anyone to appear on their behalf, in any proceeding

in Arizona; they never received any summons or service of any

kind in either the Arizona 1988 judgment or the Arizona 1992

action; and they were never personally served with any notice of

any motion to obtain the December 21, 1995, order of satisfaction

in the Arizona '88 judgment.  There is nothing in the record of

the instant case to controvert these allegations of fact.  Thus,

the Arizona proceedings were prima facie ex parte as regards the

petitioners.  See Bank of Ravenswood v. Domino's Pizza, Inc., 269

Ill. App. 3d 714, 720 (1995).  The petitioners also moved to

strike the filing of the Arizona December 21, 1995, order.

     On February 27, 1996, the petitioners filed a motion, later

denied, with the Arizona court to vacate the Arizona court's

December 21, 1995, order.

     On February 28, 1996, the circuit court of Du Page County

entered an order granting First American's motion for an order of

satisfaction and denying the petitioners' motions to strike the

filing of the Arizona December 21, 1995, order.  Specifically,

the court ordered, "In accordance with the Code of Civil

Procedure, the judgment heretofore entered by the court in the

above entitled matter is hereby vacated and held for naught." 

The petitioners now appeal the circuit court of Du Page County's

February 28, 1996, order in our court.

     On March 21, 1996, this court granted First American's

motion to dismiss voluntarily, with prejudice, its appeal

stemming from the circuit court's November 15, 1995, order.

     Section 12--652 of our Code provides that, once a foreign

judgment has been filed, it "has the same effect and is subject

to the same procedures, defenses and proceedings for reopening,

vacating, or staying" as any other judgment of a circuit court. 

735 ILCS 5/12--652 (West 1994).  In Illinois, a collateral attack

may be had on a foreign judgment based upon the defenses of fraud

in the procurement of the judgment or the lack of jurisdiction in

the foreign court.  Practice Management Associates, Inc. v.

Thurston, 225 Ill. App. 3d 470, 474 (1992).  Further, other

courts, interpreting the Uniform Enforcement of Foreign Judgments

Act (Uniform Act) (735 ILCS 5/12--650 et seq. (West 1994)), have

held that "satisfaction, lack of due process, or other grounds

that make the judgment invalid or unenforceable" (emphasis added)

may constitute valid grounds for vacating a judgment which

stemmed from the registration of a foreign judgment.  Welltech,

Inc. v. Abadie, 666 So. 2d 1234, 1236 (La. App. 1996); Wooster v.

Wooster, 399 N.W.2d 330, 333 (S.D. 1987); Matson v. Matson, 333

N.W.2d 862, 867 (Minn. 1983).

     Section 12--183(h) of our Code states, "Upon the filing of a

release or satisfaction in full satisfaction of judgment, signed

by the party in whose favor the judgment was entered or his or

her attorney, the court shall vacate the judgment, and dismiss

the action."  735 ILCS 5/12--183(h) (West 1994).  The Appellate

Court, First District, has held that this section does not bar

the judgment creditor's right to appeal following payment of that

judgment.  Herron v. Anderson, 254 Ill. App. 3d 365, 371-72

(1993); see also In re Marriage of Pitulla, 202 Ill. App. 3d 103,

110 (1990).  While the instant case differs slightly in that the

petitioners, the alleged judgment creditors, were not the

recipients of the payment allegedly made by First American, we

see no reason to deny the petitioners the right to appeal the

trial court's granting of the respondent's section 12--183 motion

(735 ILCS 5/12--183 (West 1994)).

     Neither Herron, 254 Ill. App. 3d 365, In re Marriage of

Pitulla, 202 Ill. App. 3d 103, nor the parties in the present

case make mention of what our burden of review should be with

regard to orders granted under section 12--183 (735 ILCS 5/12--

183 (West 1994)).  Our review of Illinois law reveals that no

other court has had occasion to determine the proper standard of

review for orders entered pursuant to section 12--183 (735 ILCS

5/12--183 (West 1994)).  When a valid order of release or

satisfaction of judgment is entered, an obligor is relieved of

his duty to further satisfy the judgment.  Thus, we determine

that orders entered pursuant to section 12--183, dealing with the

"release of judgment" (735 ILCS 5/12--183 (West 1994)), should be

reviewed on appeal under the same standard of review as orders

entered pursuant to section 2--1401 of the Code, dealing with

"relief from judgments" (735 ILCS 5/2--1401 (West 1994)). 

Consequently, a reviewing court should only interfere with a

trial court's decision on whether a release or satisfaction of

judgment has been properly proved where it is shown that the

trial court abused its discretion.  735 ILCS 5/12--183 (West

1994); see also Kaput v. Hoey, 124 Ill. 2d 370, 378 (1988); Smith

v. Cole, 256 Ill. App. 3d 806, 809 (1993) (abuse of discretion is

proper standard of review for petitions for relief from judgment

brought under section 2--1401 of the Code.

     Turning to the merits, we determine that the circuit court

erred for three reasons.  First, the December 21, 1995, Arizona

order should not have directly affected the Illinois registered

judgment.  Second, because the Arizona orders were entered ex

parte as to the petitioners, they may be collaterally attacked in

the circuit court.  Third, First American did not sufficiently

establish that "payment to the proper parties" was made in

accordance with section 12--183 (735 ILCS 5/12--183 (West 1994)).

     First, the circuit court erred by not recognizing that the

December 21, 1995, order did not directly affect the Illinois

registered judgment.  Once the Arizona 1988 judgment was

registered in Illinois, an Illinois judgment with a legally

independent life of its own was formed.  Light v. Light, 12 Ill.

2d 502, 508-09 (1957); 735 ILCS 5/12--652 (West 1994).  In Light,

the plaintiff registered a Missouri judgment in Illinois.  After

the judgment was registered, the judgment debtor claimed that the

foreign judgment had become satisfied and uncollectible by law in

Missouri.  After analyzing Missouri law, the Illinois Supreme

Court disagreed with the defendant, but also held that the

uncollectibility of the Missouri judgment had no effect on the

collection of the Illinois registered judgment.  Light, 12 Ill.

2d at 508-09.  The court held that "unless the registration is

set aside after a hearing [in Illinois], it is the registered

judgment that becomes the final judgment of the Illinois court." 

(Emphasis added.)  Light, 12 Ill. 2d at 508. 

     The Illinois statutes pertaining to the registration of

foreign judgments are an enactment of the Uniform Act (735 ILCS

5/12--650 et seq. (West 1994)).  The purpose of the Uniform Act

is to implement the full faith and credit clause of the United

States Constitution (U.S. Const., art. IV, §1) and to facilitate

interstate enforcement of judgments in any jurisdiction where the

judgment debtor is found.  Practice Management Associates, Inc.,

225 Ill. App. 3d at 473.  By statute, the Uniform Act is to be

interpreted and construed to effectuate these purposes, as well

as to make uniform the law of the states which enact it.  735

ILCS 5/12--657 (West 1994).

     Thus, we examine a case similar to Light, which arose under

Connecticut law.  In Burchett v. Roncari, 434 A.2d 941 (Conn.

1980), a judgment creditor sought the enforcement of a Kentucky

judgment that it had registered in Connecticut.  After

registration in Connecticut, the Kentucky judgment was nullified

by post-judgment action taken in the Kentucky court.  The

defendant claimed that the Connecticut registered judgment, in

turn, was nullified by the post-judgment action taken by the

Kentucky court.  In ruling that the post-judgment action of the

Kentucky court had no effect on the Connecticut registered

judgment, the Connecticut Supreme Court stated, "The Connecticut

judgment *** had its own independent life-support system.  A

domestic judgment enforcing a foreign judgment is not directly

affected by subsequent proceedings in the originating state." 

(Emphasis added.) Burchett, 434 A.2d at 943; see also Huntington

National Bank v. Sproul, 861 P.2d 935 (N.M. 1993) (once an Ohio

judgment was registered in New Mexico, the judgment was converted

into a New Mexico judgment). 

     Second, because the record in the instant case reveals that

the subsequent proceedings in Arizona, as well as the original

proceedings in Arizona, were ex parte as to the petitioners, the

trial court erred in not allowing the petitioners the right to

attack those orders collaterally.  A judgment rendered by a court

which "fails to acquire jurisdiction of either the parties or the

subject matter of the litigation may be attacked and vacated at

any time or in any court, either directly or collaterally." 

State Bank v. Thill, 113 Ill. 2d 294, 309 (1986); see also Dec v.

Manning, 248 Ill. App. 3d 341, 347 (1993).  Thus, aside from the

fact that the Arizona December 21, 1995, order has no direct

effect on the independent Illinois judgment, that order was also

issued ex parte as to the petitioners and, consequently, may be

attacked collaterally by the petitioners in this case.

     Third, we determine that the circuit court erred in ordering

the petitioners' case dismissed due to a satisfaction of judgment

because First American did not sufficiently establish that a

satisfaction had been entered under section 12--183 (735 ILCS

5/12--183 (West 1994)).  Section 12--183(h) provides, "Upon the

filing of a release or satisfaction in full satisfaction of

judgment, signed by the party in whose favor the judgment was

entered or his or her attorney, the court shall vacate the

judgment, and dismiss the action."  735 ILCS 5/12--183(h) (West

1994).  The record reveals that First American did not file a

satisfaction signed by the party in whose favor the judgment was

entered.  Also, the record shows that the circuit court relied

exclusively on the December 21, 1995, order of the Arizona court,

and not any such signed satisfaction, when it granted First

American's motion.  Thus, because the clear terms of the statute

were not met, we have the authority to reverse the trial court's

decision.

     However, we note that the present case illustrates an

inherent problem with the language of section 12--183 (735 ILCS

5/12--183 (West 1994)).  Where the original judgment creditor's

rights to collect on a judgment have accrued to a different

party, who then becomes the judgment creditor, and the judgment

debtor then satisfies the judgment with that different party, the

terms of section 12--183 may be difficult to meet.  Section 12--

183 requires a "release or satisfaction *** signed by the party

in whose favor the judgment was entered."  735 ILCS 5/12--183(h)

(West 1994).  Technically, the party which assumes or acquires

the right to be judgment creditor could never have a valid

satisfaction order entered against it, even where it had signed a

satisfaction document, because it was not the party "in whose

favor the judgment was entered."  735 ILCS 5/12--183(h) (West

1994).    When construing a statute, a court must ascertain and

give effect to the legislature's intent, the best indicator of

which is the language of the statute itself.  First of America

Bank v. Netsch, 166 Ill. 2d 165, 181 (1995); Moon v. Smith, 276

Ill. App. 3d 958 (1995).  However, because section 12--183 does

not contemplate a situation where the right to be the judgment

creditor has been transferred to another party, we find it

ambiguous in such a context.  

     This court has previously determined that the purpose of

section 12--183 is, in relevant part, to ensure that proof of

payment of the judgment to the proper parties has been made, thus

barring any further attempt by the judgment creditor to enforce

the judgment.  Heller v. Travel America, Inc., 229 Ill. App. 3d

439, 444 (1992), quoting In re Marriage of Pitulla, 202 Ill. App.

3d at 110.  That being so, we determine that, when dealing in the

context of a party assuming or acquiring the right to be the

judgment creditor from the original judgment creditor, a circuit

court shall grant a motion pursuant to section 12--183 (735 ILCS

5/12--183 (West 1994)) upon sufficient proofs that "payment to

the proper parties has been made."  This construction avoids an

otherwise absurd result.  See People v. Coleman, 166 Ill. 2d 247,

253 (1995) (a court interpreting a statute must assume that our

legislature did not intend an absurd result).

     We determine that the circuit court erred in ruling that

First American had sufficiently proved that "payment to the

proper parties" was made.  First American filed the Arizona

court's December 21, 1995, order with the circuit court, and the

circuit court relied exclusively upon that order when granting

First American's section 12--183 motion.  Mindful of the

proposition that "[a] domestic judgment enforcing a foreign

judgment is not directly affected by subsequent proceedings in

the originating state"  (Burchett, 434 A.2d at 943), we determine

that the mere order of one of our sister states, by itself, does

not constitute such sufficient proof.  This is especially so

where, as here, the order was entered ex parte as to the

petitioners.

     We also determine that, while the circuit court erred in

dismissing the petitioners' registered judgment, equity demands

that we remand this case for an evidentiary hearing.  Our supreme

court has envisioned and authorized such a hearing.  Light, 12

Ill. 2d at 508 (the registration of a foreign judgment may be set

aside "after a hearing" (emphasis added)).  

     Upon remand, the trial court should be aware that our

supreme court held, under the Uniform Act, that, if there is a

defense that bars the foreign judgment completely, then final

judgment on the Illinois registered judgment must be for the

party alleged to be the judgment debtor.  Light, 12 Ill. 2d at

514.  Satisfaction would be such a defense.  735 ILCS 5/12--652,

12--183 (West 1994); Welltech, Inc., 666 So. 2d at 1236; Wooster,

399 N.W.2d at 333; Matson, 333 N.W.2d at 867. 

     Turning briefly to other issues, we determine that the

petitioners' argument that the respondent has waived its right to

raise the defense of satisfaction by not raising it in pleadings

within 30 days lacks merit.  In Illinois, the defense of payment

and satisfaction may be raised by a defendant at any time.  Klier

v. Siegel, 200 Ill. App. 3d 121, 125-27 (1990).

     In addition, we determine that the respondent was not barred

by res judicata from making its section 12--183 motion to

dismiss, based upon the Arizona court's December 21, 1995, order. 

While the respondent had, indeed, made similar motions under the

same statute, none of them relied upon the December 21, 1995,

order of the Arizona court.  Instead, they relied upon the

outcome and orders of the Arizona 1992 action.  Further, the

respondent dropped its appeal of the denial of its previous

motions only after the trial court dismissed the petitioners'

registered judgment.  The petitioners cite no case law for the

proposition that res judicata applies in such an instance.

     In closing, we note that the respondent alleges in its brief

that the reversal of the trial court's satisfaction order would

make Illinois a State in which:

     "[A]nyone could claim to be successors in interest of a

     foreign judgment and, even though the original judgment

     holder had been satisfied, they would still be entitled to a

     second payment of the judgment and any subsequent

     'successors in interest' would then be entitled to third,

     fourth, and fifth payments of the same judgment."

The respondent's statement starts from a false premise, that is,

that "the original judgment holder had been satisfied."  Fairfax,

the original judgment holder, did not satisfy its judgment

against First American before dissolution.  At the crux of this

case is whether the petitioners are the proper successors in

interest of the Fairfax judgment.  Payment to a third party not

in privity with the original judgment holder does not protect the

judgment creditor from paying the judgment to a proper successor

in interest.  See 49 C.J.S. Judgments §523, at 975 (1947).

     The judgment of the circuit court of Du Page County is

reversed, and the cause is remanded in accordance with this

opinion.

     Reversed and remanded.

     BOWMAN and THOMAS, JJ., concur.