THOMAS M. DELBECARRO, Plaintiff-Appellant, v. THOMAS R. CIRIGNANI *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—0739

Opinion filed April 22, 1994.

William J. Harte, Ltd., of Chicago (William J. Harte, David J. Walker, and Joan M. Mannix, of counsel), for appellant.

Steven J. Rosenberg, P.C., of Chicago, for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:
This case involves interpretation of Supreme Court Rule 764 (134 Ill. 2d R. 764), which governs legal fees payable to a disbarred attorney. The trial judge ruled that the plaintiff, Thomas DelBecarro, a disbarred lawyer, had not complied with the rule and dismissed his complaint pursuant to the motion of the defendants, Thomas R. Cirignani and Thomas R. Cirignani & Associates, which they had filed pursuant to section 2—619 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—619.) The plaintiff maintains that the trial judge misconstrued Rule 764.

The plaintiff filed a verified complaint for accounting and injunctive relief which alleged the following. The plaintiff was voluntarily disbarred on June 17, 1986. From 1980 until May 1982, the plaintiff and Arthur Cirignani were partners in the law firm of DelBeccaro & Cirignani. Thomas R. Cirignani (Thomas) joined the firm in May 1982 and the law firm name became DelBeccaro, Cirignani, Komessar, Wintroub & Cirignani (DCKW&C). Pursuant to an oral partnership agreement, the partners were to share all fees equally.

On or about February 1, 1984, the plaintiff and Arthur Cirignani were no longer named partners in the firm, and the firm name then became Komessar, Wintroub and Cirignani (KW&C). KW&C continued to represent clients who previously had been represented by DCKW&C or by the plaintiff individually. Although the plaintiff was no longer a named partner, he continued to provide legal services for KW&C and to pay for case costs and expenses and office costs. The plaintiff also continued to share equally in the firm's profits with the other KW&C partners.

Subsequently, KW&C was dissolved and Thomas Cirignani then formed his own firm, named Thomas R. Cirignani & Associates. Thomas continued to represent those clients who previously had been represented by DCKW&C or the plaintiff individually.

At or about the time the plaintiff filed his motion for voluntary disbarment, the plaintiff and Thomas entered into an oral agreement. Thomas agreed that when attorney fees were received by Thomas individually or by his firm in connection with clients who had been represented by DCKW&C or by the plaintiff individually, Thomas would pay a portion of those fees to the plaintiff. The agreed amount was to fairly compensate the plaintiff for legal services the plaintiff had performed before his disbarment. They agreed that fair compensation would amount in some cases to 50% of any fee obtained plus reimbursement for all expenses and 20% for other cases.

The plaintiff believed that the defendants had received fees for some of the cases that were part of the agreement. The plaintiff listed in the complaint 2 of the 50% cases and 23 of the 20% cases that had been closed in which the defendants had received fees. Although the plaintiff requested payment, the defendants refused to pay. The plaintiff alleged that he was unable to determine the status of individual cases and fees with specificity and, therefore, lacked an adequate remedy at law.

The plaintiff requested the judge to order the defendants "to provide an accounting of all cases pertaining to clients who were clients of DCKW&C or of plaintiff as of February 1, 1984, and who were clients of Thomas R. Cirignani & Associates subsequent to June 27, 1986, setting forth the status of each case and, if the case had been terminated, whether any attorney's fee was paid and the amount of said fee"; to make a determination of the amount of each attorney fee which was due to the plaintiff "to compensate him for legal services performed and responsibilities assumed prior to his disbarment"; and to order the defendants "to deliver to plaintiff all money due plaintiff as determined by the Court, as well as interest on these funds from the date of receipt of the funds by defendant to the present."

The defendants' motion to dismiss raised two grounds: (1) the plaintiff failed to comply with Supreme Court Rule 764; and (2) the oral compensation agreement was unenforceable under the Statute of Frauds. The judge dismissed the complaint on the first ground.

■ Before November 1, 1989, Supreme Court Rule 764 did not address whether or how a disbarred attorney was to be paid for services rendered before disbarment. Rule 764 only provided a procedure for notifying clients of a disbarred attorney's inactive status. On October 20, 1989, Rule 764 was amended and became effective on November 1, 1989. The pertinent provisions of the amended Rule 764 are as follows:

"(h) Compensation Arising from Former Law Practice. Provided that the disciplined attorney complies with the provisions of this rule, the disciplined attorney may receive compensation on a *quantum meruit* basis for legal services rendered prior to the effective date of the order of discipline. The disciplined attorney may not receive any compensation related to the referral of a legal matter to an attorney or attributed to the 'goodwill' of his former law office.

(1) *Matters in which Legal Proceedings Instituted.* The disciplined attorney shall not receive any compensation regarding a matter in which a legal proceeding was instituted at any time prior to the imposition of discipline without first receiving approval of the tribunal.

(2) *Other Aspects of Former Law Office.* The disciplined attorney shall not receive any compensation related to any agreement, sale, assignment or transfer of any aspect of the disciplined attorney's former law office without first receiving the approval of the supreme court." 134 Ill. 2d R. 764(h).

In the plaintiff's response to the motion to dismiss, he argued that amended Rule 764 was inapplicable to this case. He contended that the rule was prospective and did not apply to his oral agreement that had been made with the defendants in 1986. He also offered three reasons why the Statute of Frauds defense did not apply here. (The defendants have abandoned any claim in this court that the Statute of Frauds was applicable.) In granting the motion to dismiss, the trial judge made the following statement:

"Although Supreme Court Rule 764(h) becomes effective after the plaintiff was disbarred, plaintiff is seeking compensation to be paid today. Therefore, a retroactive application of the rule is not needed in order to be applicable to the plaintiff's claim. The rule is framed in the present tense and all demands for present payment are governed by it.

Plaintiff contends that if the court determines that Rule 764 is

applicable to this case, defendants' motion to dismiss must still be denied because the order the plaintiff seeks in this action will necessarily include the very approval of compensation to which the rule refers.

The rule states that the disciplined attorney shall not receive any compensation without first, I emphasize, without first receiving approval of the tribunal. Thus, such approval must be obtained before any compensation has been paid."

The judge then concluded that the "tribunal" referred to in Rule 764 was the supreme court and that the complaint failed to allege that the plaintiff had received approval of the supreme court. On that basis he dismissed the complaint.

On the plaintiff's motion to reconsider he asserted that the "tribunal" referred to in the rule was not the supreme court but was the circuit court of Cook County. He argued that in drafting the rule, the word "tribunal" referred to the circuit courts, appellate courts, Industrial Commission, United States District Court and the supreme court. The trial judge denied the motion to reconsider. He said that he was still convinced that "tribunal" and "supreme court" meant the same thing in the rule.

■ Both sides have argued extensively on the question of whether the rule is prospective or retrospective. A statute (or rule) will not be given retroactive effect where, if given such an effect, it would be invalid as impairing the obligation of contracts or interfering with vested rights. (*People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815.) When a change in law merely affects the remedy or law of procedure, all rights of action ordinarily will be enforceable under the new procedure. (*Clouse v. Heights Finance Corp.* (1987), 156 Ill. App. 3d 975, 510 N.E.2d 1.) But the mere fact that a law may be considered to affect only remedies or procedural matters does not insure that it will be retroactively applied, if such application would deprive one of a vested right. (*Schantz v. Hodge-VonDeBur* (1983), 113 Ill. App. 3d 950, 447 N.E.2d 1355.) The immediate issue before us, therefore, is whether the rule interferes with the plaintiff's vested rights. We conclude that it does not.

Cases decided before the rule was adopted recognize that a disbarred attorney was entitled to recover the reasonable value of his services rendered up to the time of his disbarment. (See *Serio v. Equitable Life Assurance* (1989), 184 Ill. App. 3d 432, 540 N.E.2d 800; *Mireles v. Indiana Harbor Belt R.R. Corp.* (1987), 154 Ill. App. 3d 547, 507 N.E.2d 129; *Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 452 N.E.2d 701.) Thus, under the law before the rule was adopted, a disbarred attorney

had a cause of action to recover for the value of his services performed before disbarment. The present rule is consistent with the law as it existed before it was adopted. There is nothing in the rule that may be construed to be an abridgment of the right of a disbarred attorney to seek to enforce his rights to compensation.

During oral argument, this court recalled a case in which the supreme court disciplined an attorney for entering into improper fee arrangements with disbarred attorneys and an improper agreement for the purchase of the disbarred attorneys' practice. At our request we have been provided with material on that case from the Attorney Registration and Disciplinary Commission. The case is *In the Matter of Alan Michael Katz*, No. 86 CH 278, in which the Review Board of the Attorney Registration and Disciplinary Commission held that Katz should be suspended from the practice of law for one year because of improper fee arrangements he made with disbarred attorneys Bruce S. Berry and Richard S. Gore and an improper agreement for the purchase of the practice of Berry and Gore. The order was entered on September 14, 1990, and the supreme court affirmed the Review Board by order on December 27, 1990.

In its brief, the Administrator of the Board recognized the right of a disbarred attorney to fees:

"Illinois courts have long held that a discharged or disbarred attorney's entitlement to fees in a contingency fee situation is based upon the *quantum meruit* value of the services performed until the time of his discharge. [Citations.]"

We have also been provided with the correspondence between Michael A. Coccia, the then Chairman of the Review Board, and then Illinois Chief Justice Thomas J. Moran dated April 18, 1988. Mr. Coccia had been appointed on October 15, 1985, to chair a committee to review Rule 764 and to make a recommendation to the supreme court. In the letter to Chief Justice Moran, Mr. Coccia said this:

"On December 3, 1987, the Supreme Court invited the Rule 764 Committee to join with it in conference to review the Committee's recommendations. The Committee met with the Court on December 15, 1987. A full exchange of ideas took place resulting in the Committee's obtaining a better feel for the wishes of the court on Rule 764 issues, as well as being assigned new matters which the court asked it to look into, all of which had as a common denominator, the issues framed in recent disciplinary proceedings of *Berry and Gore* (85 CH 43; M.R. 352; and *Bruce R. Berry and Richard Gore v. Thomas J. Monahan, Director, Cook County Department of Corrections and Neil F. Hartigan, Attorney General of the State of Illinois*, 87 C 1328.) *This case highlighted the inadequacies of the existing rule.*" (Emphasis added.)

The committee comments, which were also forwarded to Chief Justice Moran, continued to recognize that a "disciplined attorney may receive a fee for services rendered prior to discipline on a *quantum meruit* basis." The committee comments also noted the following:

"Paragraph (h) also imposes upon a disciplined lawyer the obligation to seek judicial approval prior to receiving compensation for services rendered in any matter pending before a tribunal, and judicial approval from the Supreme Court for the sale of any aspect of the practice. These provisions are designed to give the court an opportunity to determine whether improper payments are being disguised as legitimate compensation."[1]

■ We conclude that by adopting Rule 764 the supreme court did not intend to impair the right of a disbarred attorney to seek compensation on a *quantum meruit* basis for the recovery of fees for legal work done before disbarment. In our judgment, the rule was designed to prevent secret arrangements between a disbarred attorney and successor attorneys under which a disbarred attorney would receive more than he would have been entitled to receive under a *quantum meruit* claim or overreaching by a disbarred attorney in dealing with a client. Required court approval of attorney fees is not unusual. (See *e.g.*, divorce proceedings, probate proceedings, class actions representations of minors, proceedings before the Illinois Industrial Commission.) We agree with the trial judge that, since the plaintiff was seeking compensation, that is, approval of fees by the judge, retroactive application of the rule was unnecessary. But we do not agree with the trial judge that the supreme court was the only tribunal which could grant "approval" to disciplined attorneys seeking compensation for their services. We agree with the plaintiff that the "tribunal" referred to in Rule 764 is whatever tribunal before which the legal proceedings were instituted.

We are unable to determine from the record whether the 25 cases mentioned in the complaint involved cases in which legal proceedings had been instituted or whether some of them had been settled before any complaints were filed. It is fair to assume that many of them did involve cases in which proceedings were instituted and that many separate "tribunals" were also involved. Judicial economy would not be served by requiring the plaintiff to institute new proceedings before each of those separate tribunals. Consequently, we hold that the trial court in this case shall determine the amount of compensa-

---

[1]We have made the correspondence between Mr. Coccia and Chief Justice Moran part of the record on appeal.

tion, if any, to which the plaintiff is entitled in each of the cases referred to in the complaint. We caution that the plaintiff's just compensation is restricted to recovery on a *quantum meruit* basis and any agreed percentages are not controlling. See *In re Estate of Murphy* (1978), 56 Ill. App. 3d 1037, 372 N.E.2d 878.

For these reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

RAKOWSKI and GIANNIS, JJ., concur.