(No. 77305

FIRST OF AMERICA BANK, ROCKFORD, N.A., f/k/a United Bank of Illinois, N.A., Appellee, v. DAWN CLARK NETSCH, Comptroller, State of Illinois, Appellant.

*Opinion filed May 18, 1995.*

MILLER, J., took no part.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas P. Sandquist, Stephen E. Balogh and J. Mark Doherty, of Williams & McCarthy, of Rockford, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, First of America Bank (the Bank), brought a declaratory judgment action in the circuit court of Winnebago County against Dawn Clark Netsch, Comptroller of the State of Illinois. The Bank sought a declaration of its obligations and the Comptroller's authority under the Illinois Funeral or Burial Funds Act (Burial Funds Act) (225 ILCS 45/1 *et seq.* (West 1992)), the Illinois Pre-Need Cemetery Sales Act (Pre-Need Act) (815 ILCS 390/1 *et seq.* (West 1992)), and the Cemetery Care Act (Care Act) (760 ILCS 100/1 *et seq.* (West 1992)). The circuit court granted the Bank's motion for summary judgment. The circuit court also declared certain amend-

ments to the Care Act unconstitutional as applied to the Bank in that they violated the contract clauses of the State and Federal Constitutions. Although the Bank's appeal was initially filed in the appellate court, that court subsequently transferred the appeal to this court pursuant to Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)).

## I. FACTS

The following facts may be gleaned from the record. The Bank holds two mortgages on real estate owned by Floral Lawns Cemetery (Floral Lawns). The owners of Floral Lawns defaulted on the mortgages held by the Bank and on unrelated mortgages. A foreclosure proceeding was instituted against Floral Lawns in the circuit court of Winnebago County. In the foreclosure proceeding, the Bank was held to have priority over all other liens on the real estate. Accordingly, the Bank was in a position to reduce its foreclosure complaint to judgment and to sell the property at a sheriff's sale.

During the pendency of the foreclosure proceeding, it became apparent that substantial sums were missing from certain trust funds that the owners of Floral Lawns were obligated to maintain pursuant to the Burial Funds Act, the Pre-Need Act, and the Care Act. Each of these statutes requires a cemetery owner to place certain amounts of money received from purchasers of cemetery property, merchandise or services in trust funds to cover the costs of such future merchandise and services. The Bank estimated that approximately $128,000 was missing from the Burial Funds Act trust fund, $33,600 from the Pre-Need Act trust fund, and $277,500 from the Care Act trust fund. The Comptroller, who is authorized to administer the three acts and to oversee the trust funds, revoked licenses that were issued to Floral Lawns under the three statutes.

The Bank contacted the Comptroller to determine whether the Bank or a purchaser at a foreclosure sale would be liable for shortages in the trust fund accounts. Ultimately, the Bank filed a three-count complaint in the circuit court of Winnebago County, seeking declaratory relief. According to the allegations in the complaint, the Comptroller's office had made statements to the Bank indicating that the Bank and/or a purchaser at a foreclosure sale would be liable for trust fund shortages and that no license would issue to a purchaser who did not replenish the funds. The complaint sought a declaration of rights under each of the statutes. Count I concerned the Burial Funds Act, count II concerned the Pre-Need Act, and count III concerned the Care Act.

In each count of the complaint, the Bank sought a declaration: (1) that the Bank would not incur liability for trust fund shortfalls by reducing its countercomplaint for foreclosure to judgment and causing the property to be sold at a sheriff's sale; (2) that a purchaser at a sheriff's sale would not be held liable for trust fund shortfalls that may exist under any of the three statutes; and (3) that the Comptroller could not condition licensure under any of the statutes upon the purchaser's agreement to replenish missing trust funds.

The Bank alleged that the Comptroller had no authority under any of the statutes to require a purchaser at a foreclosure sale to replenish trust funds or to make the issuance of a license contingent upon replenishment of trust funds. The Bank's complaint admitted that the Care Act specifically provided that a purchaser of a privately operated cemetery *is* liable for shortages in trust funds existing before and after such sale. The Bank's complaint alleged, however, that the statute applied only where a cemetery voluntarily dissolved and did not apply to a purchaser at a sheriff's sale. The Bank alleged that a finding that the Bank or a purchaser was liable for missing trust funds under any

of the statutes would have a substantial negative impact on the Bank's attempt to sell the real estate.

The Comptroller's answer to the complaint denied that it had made statements regarding the liability of the Bank or a purchaser for trust fund shortages under the Burial Funds Act, the Pre-Need Act or the Care Act. The Comptroller admitted that its "policy" was to require any party who sought a license under the Burial Funds Act or the Pre-Need Act to replenish shortages in trust funds or to provide the merchandise and services that had been paid to the cemetery by consumers. With regard to the Care Act, the Comptroller alleged that the statute spoke for itself. The Comptroller also raised, as an affirmative defense, the allegation that no justiciable controversy existed between the parties.

The Bank filed a motion for summary judgment, and the Comptroller filed a motion to dismiss. On November 3, 1993, the trial court granted the Bank's motion for summary judgment. The trial court found that neither the Bank nor the purchaser of the cemetery at a foreclosure sale could be held liable for shortages in trust fund accounts maintained under the Burial Funds Act or the Pre-Need Act. The court also held that the Comptroller could not require the purchaser of the cemetery at a sheriff's sale to replenish shortages in such trust funds as a condition of licensure. As to the Care Act, the court found that a purchaser at a sheriff's sale could not be liable for trust fund shortfalls so long as the sale occurred prior to July 1, 1994. The trial court mistakenly believed that July 1, 1994, was the effective date of Public Act 88—477, which amended the Care Act. This amendment provides, *inter alia*, that in any sale of a private cemetery, including foreclosure sales, purchasers are liable for trust fund shortages and that shortages in Care Act trust funds constitute a prior lien in favor of the trust. Pub. Act 88—477, § 10, eff. January 1, 1994.

On February 18, 1994, after considering the Comptroller's motion to reconsider, the trial court acknowledged that the amendment to the Care Act took effect on January 1, 1994. The court found, however, that application of the amendment to a sheriff's sale conducted pursuant to the foreclosure of the Bank's mortgages would impair the Bank's vested contractual rights under the mortgages, in violation of the contract clauses of the State and Federal Constitutions. The court further held that the legislature did not intend the amendment to apply retroactively. Accordingly, the court held that the Comptroller could not hold a purchaser liable for trust fund shortages under the Care Act and could not condition licensure under that statute on replenishment of trust fund shortages. The court did not revise those portions of its previous order that concerned the Burial Funds and Pre-Need Acts. As stated, the Comptroller appealed from the trial court's order.

## II. ANALYSIS

### A. Justiciable Issue

The Comptroller initially argues that the trial court should not have construed the scope of the Burial Funds, Pre-Need and Care Acts because no justiciable controversy existed between the parties within the meaning of the declaratory judgment statute (735 ILCS 5/2—701 (West 1992)). The Comptroller apparently concedes that the Bank may properly seek a judicial declaration with respect to liability the *Bank* may incur under those statutes if it sells the cemetery property in a foreclosure sale. The Comptroller argues, however, that no actual controversy exists with regard to the liability that a *potential purchaser* at a foreclosure sale may incur under the Acts.

In support of this argument, the Comptroller notes that a potential purchaser is not a party to this action.

The Comptroller also notes that, while most cemeteries are licensed under the Care Act, a purchaser need not obtain a license under the Burial Funds Act or the Pre-Need Act to operate as a cemetery. The Comptroller also contends that, if a potential purchaser applies for and is wrongfully denied a license to operate under those statutes because of the Comptroller's policy, the purchaser has an adequate remedy under the administrative review provisions of those statutes. Thus, the Comptroller argues, the trial court erred in granting declaratory relief as it related to the liability of a potential purchaser at a foreclosure sale, because no actual controversy was presented with regard to such a purchaser. We disagree.

Section 2—701(a) of the Code of Civil Procedure provides, in relevant part, that a trial court "may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute *** or other governmental regulation *** and a declaration of the rights of the parties interested." (735 ILCS 5/2—701(a) (West 1992).) A complaint for declaratory judgment must recite in sufficient detail an actual and legal controversy between the parties and must demonstrate that the plaintiff is interested in the controversy. *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76.

An "actual controversy" exists if there is a legitimate dispute admitting of an immediate and definite determination of the parties' rights, the resolution of which would help terminate all or part of the dispute. (See *Kerr Steamship Co. v. Chicago Title & Trust Co.* (1983), 120 Ill. App. 3d 998, 1003.) The requirement that an actual controversy be present does not mean that a

party must have been wronged or suffered an injury. (See *Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 214.) Rather, an actual controversy may be found "where the mere existence of a claim, assertion or challenge to the plaintiff's legal interests portends the ripening seeds of litigation." (*Stone,* 131 Ill. App. 3d at 214.) An "interest in the controversy" means that the plaintiff must have a personal claim or right which is capable of being affected. See *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76.

The declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right. (See *Gagne v. Village of LaGrange* (1976), 36 Ill. App. 3d 864.) The remedy is used to afford security and relief against uncertainty so as to avoid potential litigation. (See *Gagne,* 36 Ill. App. 3d 864.) In order to carry out the purposes for which the remedy was designed, our courts have repeatedly held that the declaratory judgment statute must be liberally construed and should not be restricted by unduly technical interpretations. *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443.

With these principles in mind, we find that the Bank's complaint sets forth an actual controversy which stems from the parties' conflicting interpretations of the scope of the Comptroller's authority under the Burial Funds, Pre-Need and Care Acts. The Bank has alleged that the Comptroller has adopted policies which rest upon an erroneous construction of those statutes, and that these policies will have a negative impact on the Bank's pecuniary interest in the mortgages it holds on Floral Lawns Cemetery. Specifically, the Bank contends that the Comptroller has adopted a policy of holding

purchasers of cemetery property liable, either directly or indirectly (e.g., by making it a condition of licensure), for shortfalls in trust funds required under the Burial Funds, Pre-Need and Care Acts. The Bank further contends that the Comptroller lacks statutory authority to hold a potential purchaser liable for trust fund shortfalls or to deny a license to operate under those acts unless trust funds are replenished. The Bank contends that the Comptroller's unlawful policy will substantially reduce the price the Bank receives for the cemetery property at the sheriff's sale. Thus, the Comptroller's current policy will have a direct impact on the Bank's pecuniary interest in the mortgages it holds on the cemetery property.

Our courts have recognized that "[t]he mere existence of a claim, assertion or challenge to plaintiff's legal interests, *** which cast[s] doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and establishes a condition of justiciability." (*Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 187.) Here, the trial court properly found that parties with adverse interests had a legitimate dispute over the scope of the Comptroller's authority under the Burial Funds, Pre-Need and Care Acts. Judicial construction of the statutes was appropriate to determine the validity of the Comptroller's policies and to help terminate the dispute between the parties before the Bank sells the property at a foreclosure sale.

We are not persuaded by the Comptroller's claim that the Bank lacks a justiciable interest in the Comptroller's policy, insofar as it relates to the liability of a potential purchaser for trust fund shortfalls. As stated, the Comptroller contends that the administrative review provisions of each statute adequately protect the purchaser's interest in obtaining a license to operate

under the three statutes. The fact that the purchaser at the sheriff's sale may later challenge the Comptroller's policy in an administrative proceeding may, of course, adequately protect the *purchaser's* interests. Such a proceeding, however, will not protect the Bank's interest in obtaining the highest legitimate price at the foreclosure sale of the cemetery property. To deprive the Bank of the opportunity to challenge the Comptroller's policy before the foreclosure sale takes place would negate the salutary purposes that underlie the declaratory judgment statute. Accordingly, we reject the Comptroller's argument that the plaintiff's complaint failed to set forth a justiciable controversy within the meaning of the declaratory judgment statute. See *Amos v. Norwood Federal Savings & Loan Association* (1977), 47 Ill. App. 3d 643 (dispute between mortgagor and mortgagee as to the legal effect of the "due on conveyance" clause of mortgage held justiciable in declaratory judgment action, even though proposed sale agreement had not been executed).

### B. Issue of Material Fact

The Comptroller next argues that the trial court erred in granting the Bank's motion for summary judgment, because disputed issues of material fact existed. Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1.) Thus, where the matter before the trial court can be decided as a question of law, the case is a proper one for summary judgment. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.) A reviewing court will reverse a trial court's grant of summary judgment if it determines that a genuine issue of material fact does exist.

The Comptroller argues that a genuine issue of material fact remains to be decided because the parties disagree over what representations the Comptroller's office made to the Bank. The Bank alleged, in its complaint, that representatives of the Comptroller's office informed it that the Bank would be liable for trust fund shortfalls under the Burial Funds, Pre-Need and Care Acts and that a purchaser would likewise be liable for trust fund shortages under those Acts. The Bank's complaint also alleged that the Comptroller's office informed it that a purchaser could not obtain a license under those statutes unless the trust funds were replenished. The Comptroller's answer denied that its office made any such representations.

The Comptroller admits, however, that a purchaser at a foreclosure sale would be liable for trust fund shortfalls under the Care Act. The Comptroller also admits that it is the policy of the Comptroller's office to require an applicant for licensure under all three acts to agree either to replenish the trust funds or to provide the merchandise and services that had been paid to the cemetery by consumers. In view of these admissions, we conclude that there was no factual dispute precluding a grant of summary judgment on the questions of a purchaser's liability under the Care Act and the Comptroller's licensing policies under all three statutes.

We agree with the Comptroller that a factual dispute did exist as to whether or not the Comptroller's office made particular *representations* to the Bank regarding the Bank's liability and the liability of a purchaser at a foreclosure sale for trust fund shortfalls under the Burial Funds and Pre-Need Acts. We find, however, that these factual issues were not material to the ultimate legal issues presented in the Bank's complaint. (See *Staley Continental, Inc. v. Venterra Sales & Management Co.* (1992), 228 Ill. App. 3d 174; *Board of Education,*

*School District No. 150 v. Greater Peoria Sanitary &
Sewage Disposal District* (1980), 80 Ill. App. 3d 1101.)
An issue of fact is not material, even if disputed, unless
it has legal probative force as to the controlling issue.
Whether the Comptroller's office *told* the Bank that it
would hold the Bank and a purchaser liable for trust
fund shortfalls under the Burial Funds and Pre-Need
Acts was not *material* to the ultimate legal issues pre-
sented, that is, whether the Comptroller had statutory
authority to hold the Bank or a purchaser at a foreclo-
sure sale liable for trust fund shortfalls under those
statutes.

Summary judgment is appropriate where the mate-
rial facts are undisputed and the record presents only
questions of law. (735 ILCS 5/2—1005 (West 1992).) We
find that the factual disputes noted by the Comptroller
did not preclude the trial court from granting the Bank's
motion for summary judgment.

### C. Burial Funds and Pre-Need Acts

The Comptroller does not appeal or challenge the
trial court's conclusions regarding the Comptroller's
statutory authority under the Burial Funds or Pre-Need
Acts. Therefore, we do not address the propriety of the
trial court's conclusions with respect to those statutes.

### D. Care Act

The Comptroller does challenge, however, the trial
court's findings with respect to the Care Act. The
Comptroller argues that the trial court erred in finding
that recent amendments to the Care Act could not be
applied constitutionally to a purchaser at the foreclo-
sure sale of Floral Lawns Cemetery. The trial court
found that application of the amended act to such
purchaser would retroactively impair the Bank's vested
contractual rights in violation of the contract clauses of
the State and Federal Constitutions. Examination and

interpretation of the relevant provisions of the Care Act are necessary to determine whether the trial court's judgment was proper.

Generally, the Care Act authorizes a cemetery authority licensed under that statute to collect money from purchasers of cemetery property and services. The cemetery authority must then hold such money in trust for the future care of cemetery property. "Care" is defined in the Act as "the maintenance of a cemetery and of the lots, graves, crypts, niches, family mausoleums, memorials, and markers therein; including cutting and trimming of lawn, shrubs and trees at reasonable intervals; keeping in repair the drains, water lines, roads, buildings, fences and other structures, in keeping with a well maintained cemetery." 760 ILCS 100/2 (West 1992).

The cemetery authority must obtain a license from the Comptroller before it is authorized to collect care funds from purchasers of cemetery property and services. (760 ILCS 100/7 (West 1992).) To insure that the cemetery authority has sufficient resources to maintain the cemetery in the future, the Care Act requires the authority to deposit a prescribed amount of care funds into a trust to be used for that purpose. (760 ILCS 100/ 2a, 4 (West 1992).) The statute authorizes the Comptroller to investigate and examine a cemetery's trust funds and to revoke licenses issued under the Care Act. 760 ILCS 100/7 through 15 (West 1992).

At issue in this appeal are those sections of the Care Act which govern the dissolution and sale of privately owned cemeteries. As originally enacted, section 15a of the Care Act specified that, where a cemetery authority owning, operating, or managing a privately operated cemetery has accepted care funds and seeks dissolution, notice must be given to the Comptroller of such intention to dissolve and proper disposition made of care funds. Ill. Rev. Stat. 1957, ch. 21, par. 64.15a.

Section 15a of the statute has been amended several times since it was added to the Care Act in 1955. In 1986, that section was amended to add the following language:

> "In the case of a sale of any privately operated cemetery or any part thereof or of any related personal property by a cemetery authority to a purchaser, *** the purchaser is liable for any shortages existing before or after the sale in the care funds required to be maintained in trust pursuant to this Act." (Pub. Act 84—239, § 28, eff. March 2, 1986.)

In 1991, section 15a was again amended to add "and shall honor all instruments issued under section 4 for that cemetery" at the end of the above paragraph.

On January 1, 1994, yet another amendment to the Care Act took effect. This amendment deleted the aforementioned paragraph from section 15a of the statute and substituted, in its place, an entirely new provision, section 15b, which states, in relevant part:

> "In the case of a sale of any privately operated cemetery or any part thereof or of any related personal property by a cemetery authority to a purchaser *or pursuant to foreclosure proceedings* *** the purchaser is liable for any shortages existing before or after the sale in the care funds required to be maintained in a trust pursuant to this Act and shall honor all instruments issued under Section 4 for that cemetery. *Any shortages existing in the care funds constitute a prior lien in favor of the trust for the total value of the shortages, and notice of such lien shall be provided in all sales instruments.*" (Emphasis added.) (760 ILCS 100/15b (West Supp. 1993), added by Pub. Act 88—477, § 10, eff. January 1, 1994.)

This section 15b further provides that "[f]or purposes of this Section, a person, firm, corporation, partnership, or institution that acquires the cemetery through a real estate foreclosure shall be subject to the provisions of this Section." 760 ILCS 100/15b (West 1992), added by Pub. Act 88—477, § 10, eff. January 1, 1994.

As noted, the trial court held that section 15b, which was added by the 1994 amendment to the Care Act, could not constitutionally be applied to a purchaser at the Bank's foreclosure sale. The court held that application of section 15b to a purchaser at a foreclosure sale would impair vested rights that the Bank acquired under its mortgage contracts, in violation of the contract clauses of the State and Federal Constitutions. To avoid any constitutional infirmity in the statute, the trial court concluded that the legislature intended that the amendments would apply prospectively only, and not to foreclosure sales where the mortgage foreclosed was executed prior to the effective date of the amendments. Accordingly, the court declared that a purchaser at the Bank's foreclosure sale could not be held liable for shortages in trust funds maintained under the Care Act.

Although the parties devote a significant portion of their briefs to a discussion of whether section 15b violates the contract clauses of the Federal and State Constitutions, we need not decide that constitutional question. We conclude that it is appropriate to resolve the questions raised in this appeal through the process of statutory construction.

The fundamental purpose of statutory construction is to ascertain and give effect to the legislature's intent. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 441.) Ordinarily, the statutory language provides the best evidence of the legislature's intent. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230.) Where the language of a statute is plain and unambiguous, courts must give that language effect without considering other indicia of legislative intent. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207.

The Comptroller argues that the plain language of section 15b demonstrates that the legislature intended that section to apply to all sales of privately operated

cemeteries that occur after its January 1, 1994, effective date, including the Bank's foreclosure sale. The Comptroller argues that the trial court erred in concluding that the legislature did not intend section 15b of the Care Act to apply to the Bank's foreclosure sale. We disagree.

We first note that section 22 of the Care Act expressly addresses this question and states that nothing in the Act shall be construed to impair the obligation of any contract. (760 ILCS 100/22 (West 1992).) Section 22 is consistent with the presumption that our courts have repeatedly applied, namely, that statutes are presumed to apply prospectively only and will not be given retroactive effect absent clear language within the statute indicating that the legislature intended such effect. (See *People v. Fiorini* (1991), 143 Ill. 2d 318, 333.) This court has stated:

> "In the absence of express language declaring otherwise, an amendatory act is ordinarily construed as being prospective in its operation. [Citations.] This general rule is based upon the principle that the legislature may not impair the obligation of contracts [citation] or interfere with vested substantive rights." (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390.)

The Comptroller argues that no retroactive application of section 15b is necessary. The Comptroller argues that section 15b applies to the Bank's foreclosure sale, because that sale had not yet occurred when section 15b took effect. In essence, the Comptroller argues that retroactive application of section 15b does not occur if the foreclosure sale occurs after that section's effective date, even if the mortgage foreclosed was executed before section 15b took effect.

The Bank responds that the Comptroller is seeking to apply section 15b retroactively. The Bank contends that applying section 15b to its foreclosure sale would violate the general rule prohibiting retroactive applica-

tion of statutes, because such application would impair rights that the Bank acquired in mortgage contracts executed before section 15b took effect. The Bank argues that the legislature intended section 15b to apply only to foreclosure sales in which the mortgage lien foreclosed was acquired after the effective date of the amendment.

Our courts have defined a retroactive law as " 'one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past.' " (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142.) Thus, retroactivity is defined in terms of the effect a law would have on vested contractual rights, not in terms of the time when a party happens to assert those rights. (*McAleer Buick-Pontiac Co. v. General Motors Corp., Pontiac Motor Division & Buick Motor Division* (1981), 95 Ill. App. 3d 111, 113-14; see also *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 383.) The rule against giving a statute retroactive application is grounded at least in part upon the constitutional guarantee against impairment of the obligation of contracts, a guarantee that could be violated if a law enacted subsequent to a party's acquiring vested contractual rights were applied to that contract. (*McAleer Buick-Pontiac*, 95 Ill. App. 3d at 113-14.) Here, we must determine whether application of section 15b to the Bank's foreclosure sale would impair vested rights that the Bank acquired under its mortgage contracts with the owners of Floral Lawns. See *Delbecarro v. Cirignani* (1994), 261 Ill. App. 3d 644, 648.

In considering this question, we note that section 15b changed the Care Act in two respects. First, it expanded the liability of purchasers of cemetery property for trust fund shortfalls. Prior to 1994, purchasers were liable only in the case of a sale "by a cemetery

authority to a purchaser." (760 ILCS 100/15a (West 1992).) Under the amended statute, on the other hand, purchasers are liable for shortfalls, not only when a cemetery is sold by a cemetery authority, but also when the cemetery property is sold pursuant to foreclosure proceedings.

The amendment also expanded the Care Act in another respect. Section 15b purported to create a "prior lien" in favor of the trust for shortages in care funds. Prior to 1994, trust fund shortages did not have priority over preexisting liens.

As stated, the Comptroller argues that the changes that section 15b effectuated did not impair or interfere with any rights that the Bank acquired under the mortgage contracts. The contracts at issue consist of two promissory notes and two mortgages securing the notes with real estate, which were executed in June 1987 and January 1988, respectively. The Comptroller contends that nothing in the mortgage contracts gave the Bank the right to a "first lien" on Floral Lawns Cemetery. According to the Comptroller, the Bank agreed in the contract to lend Floral Lawns a certain sum of money. In return, the contract obligated Floral Lawns to repay the loan amount with interest, and gave the Bank the right to institute foreclosure proceedings against Floral Lawns in the event of a default. The contracts also gave the Bank the right to obtain a deficiency judgment against the owners of Floral Lawns if the outstanding loan exceeded the amount recovered in the foreclosure sale.

The Comptroller argues that section 15b does not impair the Bank's right to bring foreclosure proceedings, its right to sell the property or its right to obtain a deficiency judgment. Rather, the Comptroller claims that the only effect section 15b has upon the Bank's contract is the source from which the Bank must collect

the outstanding debt. Because section 15b imposes a prior lien in favor of the trust for care fund shortfalls, the Bank will receive less money from the foreclosure sale, and will have to collect the balance of the debt from those persons personally liable for the loan, pursuant to the deficiency judgment.

We reject the Comptroller's argument and find that application of section 15b of the Care Act to the Bank's preexisting mortgage contracts with Floral Lawns would substantially impair those contracts, bringing into question the constitutional validity of section 15b. The terms to which contracting parties give assent may be express or implied in their dealings. (See *General Motors Corp. v. Romein* (1992), 503 U.S. 181, 188, 117 L. Ed. 2d 328, 337, 112 S. Ct. 1105, 1110.) The contracts at issue reveal that the Bank loaned approximately $300,000 to the owners of Floral Lawns. Because the Bank is not in the business of making unsecured loans in six-figure amounts, it obtained, as security for the loans, liens on the cemetery property. Our court has recognized that liens are property rights entitled to constitutional protection. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 189.) At the time the Bank made the loans and acquired its liens on the cemetery property, there was no statute imposing a prior lien on the cemetery property. The Bank and the owners of Floral Lawns contracted in light of the existing law. Thus, the Bank bargained for, and in fact received, a first lien on the real estate. The liens were marketable assets that the Bank could have sold for value.

Several years after the Bank took the notes and mortgages, the Care Act was amended to create a prior lien in favor of the trust for shortages in care funds. Application of this amendment to the Bank's contracts would attach a new disability with respect to the Bank's notes and mortgages. (See *United States Steel Credit*

*Union v. Knight* (1965), 32 Ill. 2d 138.) While the Bank would retain the right to initiate foreclosure proceedings, it could not look to the collateral, which it bargained for when it took the notes and mortgages, to satisfy the debt. Instead, it would have to try to satisfy the debt by collecting an unsecured deficiency judgment against the debtor. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. (See *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 26-27, 52 L. Ed. 2d 92, 112-13, 97 S. Ct. 1505, 1520.) Here, applying the amendment, which creates a prior lien amounting to more than $277,500 in favor of the trust, would severely limit the value and enforceability of the mortgage contracts and would substantially impair those contracts.

Similarly, at the time the Bank acquired its lien on Floral Lawns Cemetery, there was no statute imposing liability for trust fund shortfalls on purchasers at foreclosure sales. Purchasers were liable only when the property was sold by a cemetery authority. Holding a purchaser at the Bank's foreclosure sale liable for trust fund shortfalls will deprive the Bank of its security to the same extent as the prior lien provision. Application of section 15b to purchasers at the Bank's foreclosure sale will substantially reduce the value of the cemetery property and, in effect, will deprive the Bank of the collateral it obtained under the mortgage contracts.

We therefore conclude that, if section 15b was construed as applying to the Bank's foreclosure sale, it would retroactively impair the Bank's contract with Floral Lawns. Such a construction would directly conflict with section 22 of the Care Act, which expressly states that nothing in that Act shall be construed to impair the obligation of any existing contract. (760 ILCS 100/22 (West 1992).) Such a construction would also violate the general rule that statutes affecting substantive rights do not apply retroactively, absent express

language declaring otherwise. *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390.

Here, any doubts regarding section 15b's validity may be avoided by simply concluding that the legislature intended that section to apply only where such application would not impair an existing contract. This court has a duty to adopt a construction that avoids inconsistency and ensures harmony among statutory provisions, where such a construction is available. (*Santiago v. Kusper* (1990), 133 Ill. 2d 318, 327.) We do not find section 15b, when read in the context of the entire statute, so clear as to support the conclusion that the legislature intended it to apply retroactively to foreclosure sales involving mortgage contracts executed before the effective date of that section.

Our court has recognized that a statute tending to impair the obligation of a contract may be inapplicable as to contracts existing at the time of its passage but valid as to future contracts. (*Schewe v. Glenn* (1922), 302 Ill. 462, 467.) The State may properly legislate as to future contracts and, if such law is prospective only, it is valid. Here, we adopt a construction of section 15b that renders it valid and hold that the section applies prospectively only to foreclosure sales involving mortgage contracts executed after the January 1, 1994, effective date of Public Act 88—477.

For the reasons stated, we vacate that portion of the circuit court's order which declared section 15b unconstitutional. We affirm that portion of the circuit court's judgment which granted summary judgment to the plaintiff.

*Circuit court judgment*
*affirmed in part and*
*vacated in part.*

JUSTICE MILLER took no part in the consideration or decision of this case.