WALLACE, Judge.
 

 William W. Chastain, individually, and William W. Chastain, P.A., a Florida corporation (collectively, Chastain), challenge a summary judgment in favor of The Cunningham Law Group, P.A. (the Law Firm), on Chastain’s claims for breach of contract and quantum meruit. Because the circuit court erred as a matter of law in granting the summary judgment in favor of the Law Firm, we reverse.
 

 THE FACTS AND PROCEDURAL BACKGROUND
 

 Mr. Chastain was admitted to The Florida Bar- in 1974.
 
 [1]
 
 On July 1, 2003, the Supreme Court of Florida entered an order granting an emergency suspension of Mr. Chastain from the practice of law. The order gave Mr. Chastain thirty days to close out his practice. The late Anthony W. “Tony” Cunningham of the Law Finn was appointed as Mr. Chastain’s inventory attorney.
 
 [2]
 

 On October 6, 2003, Mr. Chastain and the Law Firm entered into a written agreement relative to certain of Mr. Chas-tain’s cases for which the Law Firm was to assume responsibility. Most, if not all, of the cases were contingent fee matters. The agreement provided, in pertinent part:
 

 6. [The Law Firm] will assume representation of certain cases where clients were represented by [Mr.] Chas-tain that have not been settled or closed prior to August 1, 2003, and that [Mr.] Chastain will be paid $125.00 per hour as an independent contractor for working on those cases where [the Law Firm] is representing the client per the agreement with client.
 

 7. On those particular contingency fee and hourly rate cases that [Mr.] Chastain has expended time, money and overhead costs prior to August 1, 2003, and has not accepted a fee or has been reimbursed costs, [Mr.] Chastain shall receive as a fee, compensation based on his legal fees generated for legal services performed during the time when he was legally qualified to render legal services in this state (pursuant to Rule 4-8.6, a copy of which is attached hereto and made a part hereof as Exhibit “C:”). [Mr.] Chastain will be paid upon receipt of his invoice to [the Law Firm], Said sums will be deducted from [Mr.] Chas-tain’s quantum meruit proceeds due [Mr.] Chastain on a case by case basis on contingency fee cases. If the amount paid to [Mr.] Chastain by [the Law Firm] exceeds the amount of the fees recovered, then [Mr.] Chastain remains responsible for the reimbursement of his fees to [the Law Firm]. On hourly rate cases, [Mr.] Chastain will be paid at the hourly rate charged to the clients for law clerk and/or paralegal services.
 

 Thus, under the agreement, the Law Firm was to pay Mr. Chastain compensation at an hourly rate for paralegal work performed by him after the date of the agreement. For work performed before Mr.
 
 *205
 
 Chastain’s suspension from the practice of law, the Law Firm agreed to pay Mr. Chastain on a quantum meruit basis when the cases concluded. Any payments made for work done at an hourly rate were to be credited against the amounts that might be due Mr. Chastain in quantum meruit for work he had performed before he was suspended. The agreement between Mr. Chastain and the Law Firm was reviewed and approved by The Florida Bar.
 

 Mr. Chastain rendered services to the Law Firm under the agreement until approximately March 1, 2005. For its part, the Law Firm made various payments to Mr. Chastain under the agreement. On March 18, 2005, Mr. Chastain filed with the Supreme Court of Florida an amended petition for disciplinary resignation in accordance with rule 3.-7.12, Rules Regulating The Florida Bar, with leave to seek readmission after five years.
 
 [3]
 
 The court granted the amended petition on April 7, 2005. In its order, the court noted that disciplinary resignation is tantamount to disbarment. Mr. Chastain’s disciplinary resignation was made effective, nunc pro tunc, July 31, 2003.
 

 On June 30, 2006, Mr. Chastain and his professional association filed an action against the Law Firm. Mr. Chastain claimed that the Law Firm had failed to pay him appropriate quantum meruit payments on matters that had settled before March 1, 2005. Mr. Chastain also claimed that the Law Firm had failed to pay him any quantum meruit payments for matters that had settled after March 1, 2005.
 

 Subsequently, the Law Firm moved for summary judgment. In its motion, the Law Firm relied on language from the Supreme Court of Florida’s decision in the case of
 
 Faro v. Romani,
 
 641 So.2d 69 (Fla.1994):
 

 We hold that when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation.... We further hold, however, that if the client’s conduct makes the attorney’s continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar, that attorney may be entitled to a fee when the contingency of an award occurs.
 

 Id.
 
 at 71. The Law Firm argued that Mr. Chastain “chose for his own benefit to voluntarily resign from [T]he Florida Bar and thus make it impossible for him to represent his client.” Therefore, under the rule of
 
 Faro,
 
 Mr. Chastain “should be entitled to no fee.” The circuit court agreed and entered a summary judgment for the Law Firm.
 

 DISCUSSION
 

 The holding of the
 
 Faro
 
 decision is not applicable to the facts of this case. In
 
 Faro,
 
 an attorney who had represented a client under a contingency fee arrangement withdrew from the representation on his own volition before the contingency occurred.
 
 Id.
 
 at 70. The client obtained new counsel and settled his claim for a substantial amount.
 
 Id.
 
 Subsequently, the attorney who had withdrawn sought to impose a charging lien on the settlement for his fees and costs arising from the representation.
 
 Id.
 
 Under these circumstances, the Supreme Court of Florida held that the attorney had forfeited all
 
 *206
 
 rights to compensation and was not entitled to a charging lien.
 
 Id. at
 
 71.
 

 Unlike the situation in
 
 Faro
 
 and similar charging lien cases, here Mr. Chastain is not seeking to impose a charging lien on any client’s settlement or award. Nor does he seek the recovery of fees against any of his former clients. Instead, Mr. Chastain is seeking to enforce a written contract with the Law Firm, a successor that assumed a number of his pending cases and agreed to pay him a fee based in quantum meruit for the work he had done and the expenses he had incurred in connection with those cases during the period of time that he was authorized to practice law. The Law Firm was fully informed about Mr. Chastain’s status as a suspended lawyer when it entered into the agreement, and it sought and obtained approval of the agreement from The Florida Bar. The Law Finn certainly expected to receive benefits from the arrangements that it made with Mr. Chastain, or it would not have entered into the agreement. There is nothing in the agreement providing that Mr. Chastain’s disciplinary resignation or disbarment would result in the forfeiture of his contractual rights. Furthermore, the Law Firm does not contend that the conduct which led to Mr. Chastain’s suspension and disciplinary resignation had anything to do with any of the cases for which Mr. Chastain seeks compensation under the agreement. Under these circumstances,
 
 Faro
 
 and similar charging lien cases are simply inapposite.
 
 See Sympson v. Rogers,
 
 406 S.W.2d 26, 32 (Mo.1966) (explaining the factors distinguishing cases involving attempts to impose a charging lien on a former client’s recovery from a case involving a claim for fees made by the assignee of a disbarred attorney against a successor law
 
 firm).
 

 We also note that the circuit court’s ruling is inconsistent with several ethics opinions issued by the Professional Ethics Committee of The Florida Bar. Pertinent ethics opinions issued by The Florida Bar approve the payment of fees by an attorney to a lawyer who has been suspended or disbarred for work done on a matter by the other lawyer before his or her suspension or disbarment.
 
 See
 
 Fla. Bar Profl Ethics Comm., Formal Op. 90-3 (1990) (payment of a referral fee); Fla. Bar Profl Ethics Comm., Formal Op. 72-16 (1972) (payment to suspended co-counsel); Fla. Bar Profl Ethics Comm., Formal Op. 66-20 (1966) (payment of a referral fee); Fla. Bar Profl Ethics Comm., Formal Op. 65-21 (1965) (payment of a referral fee). Ethics Opinion 66-20 addresses directly the precise issue posed by this case: “[W]here a lawyer succeeds a disbarred lawyer in representing a client, the successor lawyer may divide the fee with the disbarred lawyer to the extent realistically and fairly earned by the disbarred lawyer for services and responsibility before (but not after) his disbarment.” The reasoning underlying these opinions is applicable to fees paid to lawyers like Mr. Chastain whose petitions for disciplinary resignation from The Florida Bar were granted.
 
 See
 
 Fla. Bar Profl Ethics Comm., Formal Op. 90-3 (“This opinion also applies to attorneys who resign from The Florida Bar pursuant to Rule 3-7.11.”
 
 [4]
 
 ).
 

 Chastain’s counsel cited the pertinent ethics opinions at the hearing on the motion for summary judgment, but the circuit court dismissed them as unauthoritative. We agree that the ethics opinions of The Florida Bar are not controlling; neverthe
 
 *207
 
 less, they are persuasive authority and, if well reasoned, are entitled to great weight.
 
 See Estate of Schwartz v. H.B.A. Mgmt, Inc.,
 
 673 So.2d 116, 118 (Fla. 4th DCA 1996) (citing
 
 Krivanek v. Take Back Tampa Political Comm.,
 
 625 So.2d 840, 844 (Fla.1993),
 
 approved,
 
 693 So.2d 541 (Fla.1997)). We find The Florida Bar ethics opinions cited above to be persuasive and well-reasoned. Moreover, these opinions are in accord with well-reasoned decisions on the subject from courts in other jurisdictions.
 
 See Rutenbeck v. Grossenbach,
 
 867 P.2d 36, 37 (Colo.Ct.App.1993);
 
 Delbecarro v. Cirignani,
 
 261 Ill.App.3d 644, 199 Ill.Dec. 185, 633 N.E.2d 981, 984-85 (1994);
 
 Sympson,
 
 406 S.W.2d at 31-32.
 

 CONCLUSION
 

 For the foregoing reasons, the circuit court erred in entering the summary judgment in favor of the Law Firm. We reverse the summary judgment and remand this case to the circuit court for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 WHATLEY and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . The facts, which are drawn from the pleadings, affidavits, and documentary evidence in the record, are reviewed in the light most favorable to Chastain as the nonmoving parties against whom summary judgment was entered.
 
 Markowitz v. Helen Homes of Kendall Corp.,
 
 826 So.2d 256, 258-59 (Fla.2002).
 

 [2]
 

 . We are informed that Mr. Cunningham died on January 19, 2009.
 

 [3]
 

 . Rule 3-7.12, Rules Regulating The Florida Bar, was subsequently deleted.
 
 See In re Amendments to the Rules Regulating The Florida Bar,
 
 916 So.2d 655, 687-88 (Fla.2005). Disciplinary resignation has been replaced by the disbarment on consent process.
 
 See
 
 R. Regulating Fla. Bar 3 — 5. l(j).
 

 [4]
 

 . In 1990, rule 3-7.11 was renumbered as rule 3-7.12 (Resignation from The Florida Bar).
 
 See The Florida Bar Re Amendments to the Rules Regulating The Florida Bar,
 
 558 So.2d 1008, 1022 (Fla. 1990).